**Elbert CLEWIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 0450–94.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 31, 1996.

George E. Ashford, III, Dallas, for appellant.

April E. Smith, Asst. Dist. Atty., Dallas, Robert A. Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Appellant was convicted of burglary of a building, and the Fifth Court of Appeals affirmed his conviction. *Clewis v. State,* 876 S.W.2d 428 (Tex.App.—Dallas 1994). In his sole ground for review, appellant contends that the court of appeals erred in refusing to review the evidence to determine whether it was factually sufficient to sustain his conviction. *See Stone v. State,* 823 S.W.2d 375 (Tex.App.—Austin 1992, *pet. ref'd, untimely filed*). Specifically, appellant avers that the evidence was factually insufficient to show that he knowingly and intentionally entered the building.

The court of appeals held that Texas constitutional and statutory provisions grant and authorize courts of appeals to exercise "appellate jurisdiction to review fact questions." *Clewis,* 876 S.W.2d at 430. The courts of appeals do not possess "fact-finding authority," but may " 'unfind' a fact determination that the jury has found or failed to find." *Id.* at 430–31. The court of appeals further held that the correct standard of review for factual sufficiency of the elements of the offense in noncapital cases is the *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard: "whether, after viewing the evidence in the light most favorable to

the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789; *Clewis,* 876 S.W.2d at 437.

■ While we agree that courts of appeals are vested with the authority to review fact questions in criminal cases, we part ways with the court of appeals' holding that the correct standard of review for factual sufficiency of the elements of the offense is the *Jackson* standard. Rather, we endorse Chief Justice McGarry's analysis in his concurring opinion in *Clewis,* and conclude that the *Jackson* standard of review does not satisfy a noncapital defendant's right to an appellate review of fact questions. *Clewis,* 876 S.W.2d at 444 (McGarry, C.J., concurring). We hold that the proper standard of review for factual sufficiency of the elements of the offense is the one articulated by the Third Court of Appeals in *Stone v. State,* 823 S.W.2d at 381: The court of appeals "views all the evidence without the prism of 'in the light most favorable to the prosecution.' ... [and] set[s] aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." [1] This holding harmonizes the criminal and civil jurisprudence of this State with regard to appellate review of questions of factual sufficiency.[2] *Bishop v. State,* 43 Tex. 390 (1875); *see also Clewis,* 876 S.W.2d at 445–46 (citing *Tibbs v. Florida,* 457 U.S. 31, 45 n. 22, 102 S.Ct. 2211, 2220 n. 22, 72 L.Ed.2d 652 (1982); *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 652 (Tex.1988); *Minor v. State,* 653 S.W.2d 349, 354 (Tex. App.—San Antonio 1983) (Cadena, C.J., concurring)).

## I. Fact Jurisdiction of Appellate Courts

■ We are faced with a question of Texas law regarding the courts of appeals.[3] The Texas Constitution confers appellate jurisdiction upon the courts of appeals, Tex. Const. art. V, §§ 5 & 6,[4] that includes the power to

1. There is a split of authority in the courts of appeals as to the *Stone* factual sufficiency standard. The Austin court continued to adhere to the *Stone* standard in *Orona v. State,* 836 S.W.2d 319 (Tex.App.—Austin 1992) (per curiam). The Texarkana court has adopted the *Stone* standard. *White v. State,* 890 S.W.2d 131 (Tex.App.—Texarkana 1994, pet. filed); *Lisai v. State,* 875 S.W.2d 35, 37 (Tex.App.—Texarkana 1994, pet. ref'd.); *Hernandez v. State,* 867 S.W.2d 900, 905 n. 2 (Tex.App.—Texarkana 1993); *Lewis v. State,* 856 S.W.2d 271, 273 n. 1 (Tex.App.—Texarkana 1993); *Williams v. State,* 848 S.W.2d 915, 916–17 (Tex.App.—Texarkana 1993).

Other courts of appeals have rejected the *Stone* factual sufficiency standard. *Blackmon v. State,* 830 S.W.2d 711, 713 n. 1 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd.) (holding that *Meraz* only applies to issues where the burden of proof is on the defendant); *Lopez v. State,* 824 S.W.2d 298 (Tex.App.—Houston [1st Dist.] 1992) (refusing to extend *Meraz* to entrapment because entrapment is not an affirmative defense under Texas law); *Crouch v. State,* 858 S.W.2d 599, 601 (Tex.App.—Fort Worth 1993, pet. ref'd.); *Pender v. State,* 850 S.W.2d 201, 203 (Tex.App.—Fort Worth 1993) (per curiam); *Clewis,* 876 S.W.2d at 436 (Dallas); *Wilson v. State,* 879 S.W.2d 309, 311 (Tex.App.—Amarillo 1994); *House v. State,* 880 S.W.2d 512, 513–14 (Tex.App.—Eastland 1994); *Smith v. State,* 874 S.W.2d 269, 272 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd.); *Mukes v. State,* 828 S.W.2d 571, 573–74 (Tex. App.—Houston [14th Dist.] 1992).

The Corpus Christi and San Antonio courts addressed the *Stone* issue, but did not authoritatively adopt or reject the factual sufficiency standard. *Rodriguez v. State,* 888 S.W.2d 211, 215 (Tex.App.—Corpus Christi 1994); *Harris v. State,* 866 S.W.2d 316 (Tex.App.—San Antonio 1993, pet. ref'd.). The Tyler Court of Appeals applied the factual sufficiency test to the issue of competency, but did not reach the question of applying *Stone* to the guilt/innocence issue. *Strickland v. State,* 815 S.W.2d 309, 312–13 (Tex.App.—Tyler 1991).

2. *See generally,* Susan Bliel & Charles Bliel, *The Court of Criminal Appeals Versus the Constitution: The Conclusivity Question,* 23 St. Mary's L.J. 423 (1991).

3. This opinion is limited to the jurisdiction and proper standard of factual sufficiency review in the courts of appeals. We will not address these issues with regard to this Court since they are not properly before us in the instant case.

4. Art. V, § 6 of the Texas Constitution provides in relevant part:

   Said Courts of Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the district Courts of County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law.
   Provided, that the decisions of said courts [courts of appeals] shall be conclusive on all questions of fact brought before them on appeal or error.

review questions of fact in criminal cases.[5] *Bishop v. State*, 43 Tex. 390, 400 (1875) ("[A]ll of our subsequent constitutions have expressly given to the Supreme Court jurisdiction of criminal as well as civil cases as an appellate tribunal, and statutes have been passed providing means by which the court should be enabled to exercise its full power of revising a criminal cause *upon the law and facts* as presented in the record.") (citations omitted) (emphasis added); *Bailey v. Haddy*, Dallam 376, 378 (Tex.1841) ("An appeal . . . [subjects] the *facts as well as the law* to a review and retrial.") (emphasis added); *Republic of Texas v. Smith*, Dallam 407, 410–11 (Tex.1841) ("We decide, then, that the defendant in a criminal prosecution [in] the district court has the right of appeal to this court from the judgment or sentence of the court

below, and to have the facts as well as the law, at his own election, opened for re-examination."); *cf. Cropper*, 754 S.W.2d at 648. This Court recently acknowledged in *Bigby v. State*, 892 S.W.2d 864, 874 (Tex.Crim.App. 1994), the "considerable jurisprudence by this Court and our predecessors with criminal jurisdiction which had continually recognized the authority, though infrequently exercised, of the State's highest criminal court to review a case upon the facts as well as the law." [6] *Id.* In that case, we also noted that the Legislature has consistently recognized the ability of courts with criminal appellate jurisdiction to review the facts of a case and that Article 44.25 of the Texas Code of Criminal Procedure [7] has remained nearly identical since 1857 with each subsequent code revision.[8] *Bigby*, 892 S.W.2d at 874–75 n. 5

---

The last sentence above is referred to as the "factual conclusivity" clause. The authority of direct appellate courts to review fact questions is not derived from the "factual conclusivity" clause of article V, section 6 of the Texas Constitution; rather, it is derived from the general grant of "appellate jurisdiction" in article V, sections 5 & 6. *Bigby v. State*, 892 S.W.2d 864, 871–74 (Tex.Crim.App.1994). The "factual conclusivity" clause is a limit on the jurisdiction of the Supreme Court and the Court of Criminal Appeals in discretionary matters. *Id.*

5. Neither Judge White nor Judge Mansfield discuss in their dissenting opinions the issue addressed by the 5th Court of Appeals and presented to this Court, on the Texas Constitutional authority placed in the courts of appeals to conduct factual sufficiency reviews in criminal cases, and thus do not require comment.

6. Presiding Judge McCormick, joined by Judge Keller, in dissent, now take issue with what they perceive to be our lack of judicial restraint in finding that the courts of appeals should engage in a factual sufficiency review if such a point is raised on appeal. *Clewis*, 922 S.W.2d 152 (McCormick, P.J., dissenting). However, Texas appellate courts have been reviewing the factual sufficiency of the evidence in criminal cases for over a century. *Republic of Texas v. Smith*, Dallam 407 (Tex.1841); *Bishop v. State*, 43 Tex. 390, 399–400 (1875); *Tollett v. State*, 44 Tex. 95 (1875); *Loza v. State*, 1 Tex.App. 488 (1877); *Montgomery v. State*, 16 S.W. 342 (Tex.App. 1891); *Mitchell v. State*, 33 Tex.Cr.R. 575, 28 S.W. 475 (1894); *Murphy v. State*, 65 Tex.Cr.R. 55, 143 S.W. 616, 620 (1912); *Smith v. State*, 85 Tex.Cr.R. 355, 212 S.W. 660, 661 (1919); *Jolly v. State*, 87 Tex.Cr.R. 288, 221 S.W. 279, 281 (1920); *Cook v. State*, 88 Tex.Crim. 659, 228 S.W. 213, 216 (1921) (on rehearing); *Vogel v.*

*State*, 89 Tex.Crim. 474, 231 S.W. 1096, 1096–97 (1921); *Rochetszky v. State*, 94 Tex.Crim. 423, 251 S.W. 232, 233 (1923) (on rehearing); *Green v. State*, 97 Tex.Crim. 52, 260 S.W. 195 (1924); *Claxton v. State*, 105 Tex.Crim. 308, 288 S.W. 444, 447 (1926) (on State's motion for rehearing); *Mason v. State*, 108 Tex.Crim. 452, 1 S.W.2d 283, 284 (1928); *Powell v. State*, 116 Tex.Crim. 34, 28 S.W.2d 142 (1930); *Stevens v. State*, 121 Tex.Crim. 511, 50 S.W.2d 284 (1931); *Davis v. State*, 125 Tex.Crim. 6, 66 S.W.2d 343 (1933); *Armistead v. State*, 130 Tex.Crim. 501, 94 S.W.2d 1161 (1936); *Ralston v. State*, 133 Tex. Crim. 100, 109 S.W.2d 185 (1937); *Ballard v. State*, 136 Tex.Crim. 188, 124 S.W.2d 131 (1939); *Lozano v. State*, 138 Tex.Crim. 549, 137 S.W.2d 1031, 1032 (1940); *Villareal v. State*, 140 Tex. Crim. 675, 146 S.W.2d 406, 409–10 (1940); *Franklin v. State*, 147 Tex.Crim. 636, 183 S.W.2d 573, 574 (1944); *Lozano v. State*, 154 Tex.Crim. 229, 226 S.W.2d 118 (Tex.Crim.App.1950); *Parker v. State*, 432 S.W.2d 526 (Tex.Crim.App. 1968).

7. Tex.Code Crim.Proc.Ann. art. 44.25 provides:

The courts of appeals or the Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts.

8. In dissent, Presiding Judge McCormick, joined by Judge Keller, claim the amendments to Article 44.25 "insured" courts of appeals do not have the power to apply a factual sufficiency review. *Clewis*, at 153–54 (McCormick, P.J., dissenting). This interpretation is flawed; in fact, just the contrary is true. Despite three amendments to Article 44.25, the legislature never deleted the controlling portion of the provision which states that a reversal may be had in a criminal action "as well upon the law as *upon the facts.*" *See*

(quoting art. 44.25 of the 1979 Code, art. 848 of the 1950 Code, art. 905 of the 1892 Code, art. 870 of the 1879 Code, and art. 744 of the 1857 Code); *id.* at 875 ("[O]ur ability to factually review a criminal cause ... is inherent in our 'appellate jurisdiction' and the lack of any corresponding constitutional restriction."). When their jurisdiction to review fact questions is properly invoked, the courts of appeals cannot ignore constitutional and statutory mandates. *Clewis,* 876 S.W.2d at 430; *id.* at 441 (McGarry, C.J., concurring); *Queen v. State,* 842 S.W.2d 708, 711 (Tex. App.—Houston [1st Dist.] 1992).

We can add little to Judge Clinton's comprehensive, historical analysis of appellate authority to conduct factual sufficiency reviews in criminal cases. *Clewis,* 922 S.W.2d 126, 136–151 (Tex.Crim.App.1995) (Clinton, J., concurring). In his concurring opinion, Judge Clinton tracks the evolution of appellate judicial power and concludes that "from the beginning, 'appellate jurisdiction' included the power to examine 'factual sufficiency,' and further, that every appellate court with criminal jurisdiction recognized, acknowledged and utilized that power...." *Clewis,* at pp. 137–139 & n. 4–5 (Clinton, J., concurring). We are persuaded by Judge Clinton's rebuttal of the State's argument that once an appellate court has found "legal sufficiency" to support the verdict, it may not proceed further to review "factual sufficiency," even if properly raised. *Id.* at part II.C. (Clinton, J., concurring) (explaining that *Franklin v. State,* 147 Tex.Crim. 636, 183 S.W.2d 573 (App.1944), cannot be read to rule out a factual sufficiency review by an appellate court and that "constitutional power to conduct such a review is not lost through pretermission....").

*Bigby,* 892 S.W.2d at 874 n. 5. The language removed from the statute was in response to *Burks–Greene* and *Johnson v. State,* not a declaration of the legislature's intent to deny appellate courts the power to engage in a factual sufficiency review. *See Clewis,* slip op. at part III, n. 14 (Clinton, J., concurring).

9. The Texas Supreme Court originally exercised appellate jurisdiction in both civil and criminal matters until the adoption of the 1876 Constitu-

## II. Standard of Review

### A. Civil Factual Sufficiency Review

■ The Texas Supreme Court has consistently interpreted Art. V, § 6 of the Texas Constitution to mean that the courts of civil appeals, and later the courts of appeals, have the authority and responsibility to review the verdicts in civil cases to determine whether the evidence is factually sufficient.[9] *See Meraz v. State,* 785 S.W.2d 146, 149 (Tex. Crim.App.1990); *Cropper,* 754 S.W.2d at 648; *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986); *Choate v. San Antonio & A.P. Ry. Co.,* 91 Tex. 406, 44 S.W. 69 (1898). That court has stated that the scope of review under a factually sufficient point

requires the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Procedure Nos. 451, 453, and 455, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust....

*In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *see Cropper,* 754 S.W.2d at 646; *Pool,* 715 S.W.2d at 634.

### B. Criminal Factual Sufficiency Review

■ Since the creation of the Texas Court of Criminal Appeals in 1891, appellate jurisdiction has included the power to examine factual sufficiency, and "every appellate court with criminal jurisdiction recognized, acknowledged and utilized that power...." *Clewis v. State,* 922 S.W.2d at 141 (Clinton, J., concurring); *see Bigby,* 892 S.W.2d at 874 (citing cases that have recognized the authority of the State's highest criminal court to

tion. The Texas Constitution of 1876 created the original "Court of Appeals," which had both criminal and civil appellate jurisdiction. The constitutional amendments of 1891 changed the "Court of Appeals" to the Court of Criminal Appeals and created the "courts of civil appeals." A 1980 constitutional amendment gave the "courts of civil appeals" criminal appellate jurisdiction and renamed them "courts of appeals." Tex. Const. art. V, § 4. *See Stone,* 823 S.W.2d at 377–78.

review a case upon the facts as well as the law).

■ While this Court has not determined the proper standard for a factual sufficiency review of the elements of the offense by courts of appeals, it has set the standard for factual sufficiency review in cases where the defendant has asserted an affirmative defense or otherwise has the burden of proof on another fact issue. When the defendant has asserted an affirmative defense or has the burden of proof on an issue, a reviewing court considers all the evidence and determines whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust:

> The court of appeals is therefore constitutionally given the authority to determine if a jury finding is against the great weight and preponderance of the evidence and if this is improper it is up to the people of the State of Texas to amend the Constitution.

*Meraz*, 785 S.W.2d at 154; *see Ex parte Schuessler*, 846 S.W.2d 850, 852 (Tex.Crim. App.1993).

## C. *Jackson v. Virginia*

The court of appeals held that the *Jackson* standard, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," incorporates both a legal and factual sufficiency review. We reject this holding given the context in which the *Jackson* standard was initially formulated and the historical meaning of "review upon the facts."

## 1. Context of *Jackson*

Acknowledging that "state appellate review undoubtedly will serve in the vast majority of cases to vindicate the due process protection that follows from [*In re* ] *Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ]," the United States Supreme Court in *Jackson* set the standard for reviewing the sufficiency of state convictions on *federal writs of habeas corpus. Jackson,* 443 U.S. at 322, 99 S.Ct. at 2791. This standard constitutes the *minimum* standard for sustaining a conviction under the Due Process Clause of the Fourteenth Amendment. *Jackson,* 443 U.S. at 317–18, 99 S.Ct. at 2788. In no way does *Jackson* itself reference state constitutional or statutory law regarding appellate review. Although Texas courts have adopted the *Jackson* standard as the legal sufficiency standard in direct appeals,[10] we have never held that its application precluded any other type of review. *Clewis,* 876 S.W.2d at 413–44 (McGarry, C.J., concurring); *Stone,* 823 S.W.2d at 379. As we explicitly noted in *Griffin v. State,* 614 S.W.2d 155, 159 n. 5 (Tex.Crim.App.1981), "[S]tates are free to set higher standards of review [than *Jackson* ]."

■ The court of appeals correctly stated that "whether the evidence satisfies the current *Jackson* test is a 'question of *law.* ' " *Clewis,* 876 S.W.2d at 429 n. 1 (quoting *Combs v. State,* 643 S.W.2d 709, 716 (Tex. Crim.App.1982), *overruled on other grounds, Butler v. State,* 769 S.W.2d 234, 239 (Tex. Crim.App.1989), *and Meraz v. State,* 785 S.W.2d at 155). That is, if the evidence is insufficient under the *Jackson* standard, it is "legally insufficient." A determination that the evidence is "legally insufficient" means that the case should never have been submit-

---

10. The court of appeals' opinion stated that a correct standard of review under *Jackson* must include a review of *all* of the evidence adduced at trial to determine the sufficiency of the evidence to prove the elements of the offense. *Clewis,* 876 S.W.2d at 436. While the court of appeals correctly noted that *Jackson* specifically requires appellate courts to look at *all* the evidence, in Texas, we have applied *Jackson* in such a way that the only evidence a reviewing court considers is the evidence that supports the verdict. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991) (holding that the jury is the sole judge of the credibility of the witnesses and

may choose to believe all, some, or none of the testimony); *Burns v. State,* 761 S.W.2d 353, 355–56 (Tex.Crim.App.1988) (holding that reconciliation of conflicts in the evidence is within the exclusive province of the jury); *Losada v. State,* 721 S.W.2d 305, 309 (Tex.Crim.App.1986). In practice, to the extent that reviewing courts look at all the evidence, they do so merely for the purpose of determining whether it supports the verdict. A reviewing court will ultimately disregard any evidence that does not support the verdict. *E.g., Chambers,* 805 S.W.2d at 461; *Burns,* 761 S.W.2d at 355–56.

ted to the jury.[11] *Clewis*, 876 S.W.2d at 429 n. 1 (citing *Ex parte Schuessler*, 846 S.W.2d at 852 n. 5).

■ In contrast, the issue of factual sufficiency is a question of fact. *Ex parte Schuessler*, 846 S.W.2d at 852 n. 5. A *Jackson* review, "viewing the evidence in the light most favorable to the prosecution," is not a factual sufficiency review; rather, it is an analytical tool used to determine whether there is a fact issue at all.[12] *Clewis*, 876 S.W.2d at 441 (McGarry, C.J., concurring). The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." [13] *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

■ In conducting a factual sufficiency review, an appellate court reviews the factfinder's weighing of the evidence and is authorized to disagree with the factfinder's determination. This review, however, must be appropriately deferential so as to avoid an appellate court's substituting its judgment for that of the jury. *Id.* at 443 (McGarry, C.J., concurring).

### 2. Historical Meaning of Reversal on the Facts

■ While courts of appeals have typically conducted a *Jackson* review when a defendant attacks the sufficiency of the evidence of an element of the offense,[14] nothing in the

Texas Constitution or the Texas Code of Criminal Procedure limits the courts of appeals to a *Jackson* review. *See Bigby*, 892 S.W.2d at 874–75; *Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89; *Griffin*, 614 S.W.2d at 159; *Ex parte Schuessler*, 846 S.W.2d at 852 n. 5; *Stone*, 823 S.W.2d at 379. After a court of appeals has determined that the evidence is legally sufficient under *Jackson* to support the verdict, it may proceed further to review factual sufficiency if it is properly raised. *Clewis*, slip op. at II (Clinton, J, concurring).

■ If a reviewing court determines that the evidence is insufficient under the *Jackson* standard, it must render a judgment of acquittal. *Tibbs v. Florida*, 457 U.S. at 42, 102 S.Ct. at 2218. As the concurring opinion in the court of appeals below noted, "To render a judgment of acquittal is to literally substitute the judgment of the reviewing court for that of the jury." *Clewis*, 876 S.W.2d at 441 (McGarry, C.J., concurring). This is because, as stated earlier, if the evidence is insufficient under *Jackson*, the case never should have been submitted to the jury. *Supra* part. II.C. However, when conducting a factual sufficiency review, an appellate court cannot substitute its judgment for that of the factfinder since this would violate the defendant's right to trial by jury. *See Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218; *Clewis*, 876 S.W.2d at 441 (McGarry, C.J., concurring); *see also Choate*, 44 S.W. at 70. Accordingly, courts of appeals should

---

11. In *Combs*, we held that this Court had jurisdiction to conduct a *Jackson* review where the court of appeals had already conducted one because a *Jackson* review is a question of law and not of fact. *Combs*, 643 S.W.2d 709, 716–17. Our holding indicates that *Jackson* is not a factual sufficiency review.

12. The concurring opinion in the court of appeals provided a useful example illustrating the distinction between legal and factual sufficiency: The prosecution's sole witness, a paid informant, testifies that he saw the defendant commit a crime. Twenty nuns testify that the defendant was with them at the time, far from the scene of the crime. Twenty more nuns testify that they saw the informant commit the crime. If the defendant is convicted, he has no remedy under *Jackson* because the informant's testimony, however incredible, is legally sufficient evidence.

*Clewis*, 876 S.W.2d at 444 n. 2 (McGarry, C.J., concurring).

13. The *Jackson* Court further noted:

Under the standard established in this opinion as necessary to preserve the due process protection recognized in *Winship*, a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

*Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793.

14. *E.g.*, *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988); *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984); *Griffin v. State*, 614 S.W.2d at 159.

vacate a conviction based on factually insufficient evidence and remand the cause for a new trial.

In sum, the *Jackson* standard does not incorporate a factual sufficiency review of the evidence because the appellate court does not review the factfinder's weighing of the evidence.[15] *Clewis*, 876 S.W.2d at 443 (McGarry, C.J., concurring). The test comprises the minimum standard for comporting with federal due process; this Court has never held that *Jackson* constitutes a factual sufficiency review.

## D. *Stone* standard

Appellant urges us to hold that when the factual sufficiency of an element of the offense is challenged, courts of appeals should apply the *Stone* standard of review, articulated by the Third Court of Appeals. *Stone*, 823 S.W.2d at 381. In contrast to the court of appeals in the instant case, the *Stone* court observed that a factual sufficiency review begins with the presumption that the evidence supporting the jury's verdict was legally sufficient, that is, sufficient under the *Jackson* test. *Id.* at 381. In conducting a factual sufficiency review, the court of appeals "views all the evidence without the prism of 'in the light most favorable to the prosecution.' ... [and] set[s] aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.*[16]

The court of appeals in the instant case noted:

[T]he *Stone* standard correctly imports the beyond-a-reasonable-doubt burden of proof. Implicit in the *Stone* analysis is that court's consideration of the higher burden of proof required for a criminal conviction. We interpret the *Stone* opinion as an attempt to apply the civil factual sufficiency standard of review to the evidence of the elements of a criminal offense by adapting it for the different burden of proof at trial. Accordingly, the *Stone* standard assesses all the evidence "impartially" to determine if it is *factually* sufficient for a factfinder to have found appellant guilty *beyond a reasonable doubt.*

*Clewis*, 876 S.W.2d at 433 (citations and notes omitted).

Although the court of appeals indicated that the *Stone* standard "correctly" imports the beyond-a-reasonable-doubt burden of proof, it found the *Stone* standard deficient for two reasons: (1) *Stone* violates a defendant's right to trial by jury, Texas Constitution art. I, § 15, by denying the factfinder the deference required by the Texas Constitution; and (2) the *Stone* standard violates the federal and Texas prohibition against double jeopardy, U.S. Const. amend. V and Tex. Const. art. I, § 14.

### 1. Factfinder deference and right to trial by jury

The Code of Criminal Procedure contains two provisions establishing that the jury is

---

**15.** In applying *Jackson* in the capital sentencing context, we have emphasized that *Jackson* constitutes a very limited review:

[A]s an appellate court, our task is to consider all of the record evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict and to determine whether, based on that evidence and those inferences, a rational jury could have found beyond a reasonable doubt [the elements of the offense or the special issue under consideration]. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1973 [1979]). Thus, our review is a very limited one. We do not act as a thirteenth juror re-evaluating the weight and credibility of the evidence. Rather, we act only "as a final, due process safeguard ensuring ... the rationality of the factfinder." *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

*Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim.App.1994), *cert. denied*, — U.S. —, 115 S.Ct. 671, 130 L.Ed.2d 604 (1994); *see also Chambers v. State*, 903 S.W.2d 21, 25 (Tex.Crim. App.1995).

**16.** Texas courts have articulated the standard for factual sufficiency review in various ways. Examples include: "so against the great weight and preponderance of the evidence," "so against the overwhelming weight of the evidence as to be clearly wrong and unjust," and "so against the great weight and preponderance of the evidence as to be manifestly unjust." We agree with Judge Clinton's concurring opinion and the court of appeals below that these standards of factually sufficiency review, as applied, are identical. *Clewis*, at 148 (Clinton, J., concurring); *Clewis*, 876 S.W.2d at 433 n. 10.

the judge of the facts. Tex.Code Crim.Proc. Ann. art. 36.13 [17] & 38.04.[18] Notably, Chapter 36, "Trial Before the Jury," and Chapter 38, "Evidence in Criminal Actions," do not reference the appellate process, and no similar provision appears in the Rules of Appellate Procedure. The import of the provisions in the Code is, in part, to distinguish the role of the jury from the role of the judge at trial. Further, the court of appeals' interpretation of these statutory provisions is overly broad and would essentially preclude *any* appellate review of the jury's determination of the facts and the weight to be given the evidence. *Clewis*, 876 S.W.2d at 442 (McGarry, C.J., concurring). This conflicts with appellate courts' jurisdiction and obligation to review criminal convictions "as well upon the law as well as upon the facts." Tex.Code Crim. Proc.Ann. art. 44.25. The appropriate balance between the jury's role as the judge of the facts and the reviewing court's duty to review criminal convictions is struck by *not* allowing the appellate court to "find" facts, or substitute its judgment for that of the jury;[19] rather, when it determines that the verdict is against the *great* weight of the evidence presented at trial so as to be *clearly wrong and unjust*, it must reverse the verdict and remand for a new trial.

"The same Constitution which guarantees a right of trial by jury empowers Courts of Civil Appeals finally to decide all fact questions." *Pool*, 715 S.W.2d at 634, *quoting* Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 368 (1960). The historical safeguards of the "inviolate" right to trial by jury are found in the deferential standards of review applied and the prohibition against rendition of judgment upon a factual insuffi-

ciency point. Appellate courts should only exercise their fact jurisdiction to prevent a manifestly unjust result; ... those courts "are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable." *Pool*, 715 S.W.2d at 634, *quoting Dyson v. Olin Corp.*, 692 S.W.2d 456, 458 (Tex.1985) (Robertson, J., concurring). Instead of rendering or substituting its judgment for that of the factfinder, a reviewing court returns the case to trial before a different jury. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218; *see Cropper*, 754 S.W.2d at 651. In *Meraz*, 785 S.W.2d at 154, this Court acknowledged its concern that when the courts of appeals exercise their fact jurisdiction, they may merely substitute their judgment for that of the jury. However, we held that "sufficient safeguards can be imposed by this Court to guarantee that the mental processes of the scrivener are reflected in the opinion so that we may ascertain whether the process resulted in an usurpation of the jury function." *Meraz*, 785 S.W.2d at 154. These safeguards include:

In order that this court may in the future determine if a correct standard of review of factual insufficiency points has been utilized, courts of appeals, when reversing on insufficiency grounds, should, in their opinions, detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient ... as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.

17. Unless otherwise provided in this Code, the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby.
Tex.Code Crim.Proc.Ann. art. 36.13.

18. The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony, ....
Tex.Code Crim.Proc.Ann. art. 38.04.
The civil counterpart to Article 38.04 is Rule of Civil Procedure 226a. Rule 226a contains a jury admonishment providing that the jurors "are the sole judges of the credibility of the witnesses and

the weight to be given their testimony, ...."
Tex.R.Civ.P. 226a.

19. In deciding insufficient evidence points of error,

a court of appeals does not find facts; it only "unfinds" a vital fact. Moreover, action by a court in "unfinding" a vital fact is not an unconstitutional usurpation of the right of trial by jury.
Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 368 (1960).

*Pool,* 715 S.W.2d at 635 (quoted in *Meraz,* 785 S.W.2d at 154 n. 2). We see no reason why these safeguards, which we held adequate in a factual sufficiency review of an affirmative defense, *Meraz,* 785 S.W.2d at 154, are not also adequate in a factual sufficiency review of the elements of the offense. Thus, these safeguards help ensure that the factfinder is given the appropriate deference and that the defendant's right to trial by jury remains inviolate.

### 2. Double Jeopardy

Neither the federal nor the Texas prohibition against double jeopardy, U.S. Const. amend. V.; Tex. Const. art. I, § 14, preclude defendants from seeking an acquittal through a new trial. *Tibbs v. Florida,* 457 U.S. at 45, 102 S.Ct. at 2220; *Lofton v. State,* 777 S.W.2d 96, 97 (Tex.Crim.App. 1989). As the United States Supreme Court held, the Double Jeopardy Clause does not prohibit a retrial if the reversal is based on factual insufficiency of the evidence. *Tibbs,* 457 U.S. at 39, 102 S.Ct. at 2216–17 (cited in *Meraz,* 785 S.W.2d at 156). However, retrial is prohibited where the reviewing court determines that the evidence is insufficient under *Jackson.* That is, as a practical matter, the State has only one opportunity to present evidence *legally* sufficient to convict a defendant. *Meraz,* 785 S.W.2d at 156.

In sum, we are not persuaded that the *Stone* standard denies the factfinder the deference required by the Texas Constitution, violates defendants' right to trial by jury, or violates the prohibition against double jeopardy. Instead, we hold that the *Stone* standard correctly imports the beyond-a-reasonable-doubt burden of proof and successfully adapts the factual sufficiency standard to the burden of proof at a criminal trial.[20]

Accordingly, we vacate the judgment of the court of appeals and remand the instant cause to that court for further proceedings consistent with this opinion.

CLINTON, Judge, concurring.

The Court is squarely presented with the compelling questions of whether a court of appeals is empowered to determine "factual sufficiency" of the evidence of one or more elements of an offense to sustain a conviction in a criminal case less than capital with the death penalty assessed; if so, what is the proper standard of review. See *Clewis v. State,* 876 S.W.2d 428, at 430–431 (Tex. App.—Dallas 1994).[1] Holding with Trench that "[t]he present is only intelligible in light of the past," I propose to track evolution of appellate judicial power in this jurisdiction, and then apply that which is made intelligible to the present.[2]

20. The dissent states that our opinion "increases the likelihood" citizens will become victims of crimes in exchange for protecting a defendant from an unjust conviction. Dissent pg. 157. Our holding simply restates what the Texas Constitution provides as to the jurisdiction of the Courts of Appeals, insuring that the verdict is not contrary to the overwhelming weight of the evidence. The Texas Constitution already requires, ie. that the State satisfy its burden to put on evidence of the elements of an offense in order to prove guilt sufficiently, both factually and legally.

1. The court of appeals did conclude that certain constitutional and statutory provisions establish *"appellate* jurisdiction to *review* fact questions." However, as to the *"standard of review"* to apply in resolving factual sufficiency challenges to the evidence supporting an element of the charged offense, the court of appeals decided that "when the burden of proof is 'beyond a reasonable doubt,' such a factual sufficiency review is necessarily included within a general sufficiency review performed under the *Jackson v. Virginia* standard of review as adopted in this state." *Id.* at 430–431, 439.

The local district attorney and the State Prosecuting Attorney support that formulation; however, the latter introduces consideration of other matters, *inter alia,* his perception of this Court's "historical understanding of what it means to reverse 'upon the facts.'" Supplemental Brief, at 2 ff.

(Emphasis above by the court of appeals; all other emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

2. At the outset, defining its terminology, the court of appeals stated that in Texas criminal cases "historically, there have only been 'insufficient evidence' challenges without a legal or factual distinction." *Id.,* at 429, n. 1. Actually, evidentiary challenges invoked constitutionally based judicial power in the premises, settled early on in the appellate jurisprudence of this State. See Part I and Part 2A, *post,* at 137–140. All that caselaw later went unnoticed in decisions such as *White v. State,* 591 S.W.2d 851, 855–856 (Tex.Cr.App.1979), and *Combs v. State,* 643 S.W.2d 709 (Tex.Cr.App.1982). See Part IIIA,

I

A

The Constitution of Republic of Texas vested "the judicial powers of government" in a Supreme Court and such "inferior courts" as the Congress may establish. The Supreme Court was empowered with "*appellate jurisdiction* only, which shall be conclusive, within the limits of the Republic[.]" *Id.*, Article IV, §§ 1 and 8; 3 Vernon's Ann.Tex. Const. 482, at 486 (1993).

The Supreme Court soon determined that as a court functioning under a constitutional grant of general "appellate jurisdiction" it had the power to review both questions of fact and of law, subject only to the restriction that right to trial by jury remain inviolate. *Bailey v. Haddy*, Dallam 376, at 378 (1841). In *Republic of Texas v. Smith*, Dallam 407, at 410–411 (1841), the Supreme Court declared that in criminal prosecutions it could revise the judgment upon facts as well as law, at the option of appellant.[3] Accord: *Bishop v. The State*, 43 Tex. 390, at 400 (1875) (as quoted in *Bigby*, 892 S.W.2d 864, at 872 (Tex.Cr.App.1994). Until the 1891 constitutional amendments the court continued to reaffirm and exercise its power to review and reverse jury verdicts on factual issues. See cases collected in *Cropper v.*

*post*, at 144–146. The current imbroglio recurs more than a decade since the issue was raised upon the 1981 amendments to germane constitutional provisions divesting this Court of its direct appeal jurisdiction in favor of the courts of appeals in all cases except capital murder where the death penalty is imposed. Several court of appeals addressed the question but came up with mixed answers. We left similar issues "open" in *Minor v. State*, 657 S.W.2d 811, at 812 (Tex.Cr. App.1983), partially "closed" some in *Meraz v. State*, 785 S.W.2d 146 (Tex.Cr.App.1990), but have yet finally to resolve this one. See *Meraz v. State*, supra, at 156.

3. Shortly after achieving statehood the Legislature dealt expressly with appeals to the Supreme Court in criminal cases. Acknowledging that defendant had the right of appeal (except in contempt matters), it provided that "upon an *examination and revision* of any criminal cases, the supreme court shall proceed to render such judgment as the law of the case may require, confirming the judgment of the district court, if there be no errors upon the record, *revising* the same in case of error, and *remanding the cause* at their discretion *for a new trial.*" Act of May 13,

*Caterpillar Tractor Co.*, 754 S.W.2d 646, at 648–649 (Tex.1988). The court summarized the nature of its power and duty to do so in *Missouri Pac. Ry. Co. v. Somers*, 78 Tex. 439, 14 S.W. 779 (1890), *viz:*

> "... Although this court has the power to review a case upon the facts, and to set aside a verdict which has evidence to support it, that power has been reluctantly exercised. But it is the right and duty of the court to set aside a verdict, *when it is against such a preponderance of the evidence, that it is clearly wrong.* [citations omitted]."

*Ibid.* When in turn the Constitution vested this Court with "appellate jurisdiction" in criminal cases, as we shall see, it adhered to the doctrinal foundation previously laid down by the Supreme Court.

B

Meanwhile, the Constitution of 1876 divested the Supreme Court of jurisdiction over criminal cases, created the former court of appeals, and granted it the same power taken from the Supreme Court to exercise "appellate jurisdiction ... in all criminal cases, of whatever grade." *Id.*, Article V, § 6; Tex. Rev.Stat. (State Printing Office 1879) at 29. The Legislature redundantly declared verba-

1846, §§ 1 & 8; 2 Gammel's Laws of Texas 1636–1639.

Some ten years later the Sixth Legislature codified penal and procedural statutes in criminal matters. Title VII in the latter treats appeals by the State and defendant and, building on the foundation laid down by the Supreme Court, structured the procedural formulation for all subsequent appellate dispositions, *viz:*

"Art. 742. The judgment in a criminal action, upon appeal, may be wholly reversed and dismissed when brought by the defendant ...; the judgment may be reformed and corrected, or the cause may be remanded for further proceedings in the District Court, as the law and the nature of the case may require.

\* \* \* \* \* \*

Art. 744. The Supreme Court may revise the judgment in a criminal case, *as well upon the law as upon the facts;* but when a case is reversed for the reason that the verdict is *contrary to the weight of the evidence,* the same shall in all cases be remanded for a new trial." The Code of Criminal Procedure ("Old Code" 1856), 6th Leg., Title VII, p. 137, at 141–142 (Galveston 1857).

tim the same jurisdiction, and for good measure added "as is provided in the Code of Criminal Procedure." Article 1068, *id.*, at 175. Article 66, C.C.P. 1879, merely sustained its "appellate jurisdiction ... in all criminal cases of whatever grade."

More specifically, the Legislature recognized that, among other dispositions, the court of appeals may reverse the judgment of the court below and remand for a new trial. Article 869, *id.* Bringing forward provisions in O.C. 744, the Legislature iterated that same constitutional power the Supreme Court initially found declared and exercised, *viz:*

> "The court of appeals may revise the judgment in a criminal case, as well upon the law as *upon the facts;* but when a cause is reversed for the reason that the verdict is *contrary to the weight of the evidence,* the same shall, in all cases, be remanded for a new trial."

Article 870, *id.*

Contemporaneously with the Supreme Court in civil cases and having inherited as it were the "appellate jurisdiction" of the Supreme Court in criminal cases, see *ante,* the court of appeals did not hesitate to exercise its constitutional power and right to discharge its duty in the premises. Its decisions under former articles 869 and 870, *ante,* demonstrate a resolve to examine and weigh all the evidence, meticulously if need be, to determine sufficiency questions—certain of its authority and usually, but not always, articulating the legal basis for its evidentiary decision.

In its first year, for example, confronting testimony tending to contradict statements by the main prosecuting witness, the court reviewed and evaluated the "whole testimony and the charge of the court" to conclude: "We are *not* fully satisfied" that "the evidence is sufficient to support the verdict and judgment of conviction [and] we think the [trial] court erred in refusing a new trial [on appellant's motion contending] 'the verdict of the jury is contrary to the law and the evidence.'" *Henderson v. The State,* 1 Tex. App. 432, at 437 (1876). Compare: *Loza v. The State,* 1 Tex.App. 488, at 489–490 (1877) (applying rules of law to undisputed evidentiary facts, court weighs evidence to find it "insufficient" to prove felonious intent to steal—notwithstanding legislative admonition that jury is exclusive judge of facts proved and weight given to testimony). See also *Gay v. The State,* 2 Tex.App. 127, at 133–134 (1877) (evaluating and weighing testimony, finding it insufficient to support verdict).

Later cases also make clear that the court of appeals, like the Supreme Court before it, see *ante,* at 140, understood the nature and extent of its power to review jury verdicts for evidentiary sufficiency, albeit not then labelled "legal sufficiency" and "factual sufficiency." [4]

In *Walker v. The State,* 14 Tex.App. 609 (1883), the State insisted that because "it was the peculiar province of the jury to determine the facts," the court lacked authority to set aside the verdict "where there is *any* evidence to sustain it[.]." *Id.,* at 628 (emphasis in original). Scholarly Judge Willson in a seminal opinion for a unanimous court responded. Alluding to former articles 676 and 728, C.C.P. 1879 (jury is the exclusive judge of the facts proved and the weight to be given to testimony), Judge Willson first countered that the court of appeals had authority to *revise* the facts, and to reverse the judgment for the reason that the verdict is con-

---

4. See, e.g., *King v. The State,* 4 Tex.App. 256, at 258 (1878) (White, J.); *Jones v. The State,* 4 Tex.App. 436, at 443–444 (1878) (White, J.); *Jones v. The State,* 5 Tex.App. 86, at 88 (1878) (Winkler, J.); *Barnell v. The State,* 5 Tex.App. 113, at 115–116 (1878) (Winkler, J.). In each case the Court determined *"legal sufficiency"* according the "general rule" laid down in *Tollett v. The State,* 44 Tex. 95, at 97–98 (1875), (whether *sufficient amount of legal and competent evidence* safely to allow verdict and judgment to become precedent in adjudication of offenses under the law; Court duty bound to exercise legal discretion and judgment as to facts sufficient to rebut legal presumption of innocence).

Compare: *March v. The State,* 3 Tex.App. 335, at 336 (1877) (White, J.); *Lockhart v. The State,* 3 Tex.App. 567, at 570 (1878) (Ector, P.J.); *Blake v. The State,* 3 Tex.App. 581, at 587 (1878) (Ector, P.J.); *Gamble v. The State,* 5 Tex.App. 421, at 422 (1879) (White, J.). In each case the Court determined *"factual sufficiency"* on conflicting evidence according to whether, as variously phrased, the verdict or judgment works an "injustice" to defendant; is "clearly and manifestly wrong;" or is "manifestly wrong."

trary to the *weight of evidence.* But he explained:

"[Yet], it has been the general practice of this court to refuse to set aside a verdict where the evidence was *conflicting,* but where there was *sufficient,* if believed, to support the finding. (citations omitted) (emphasis in ordinal).

But even in such case, where it was *manifest that the verdict was wrong,* and it was *clear that injustice had been done* the defendant, it has been set aside, though there was *evidence sufficient to support it.* (citations omitted).

And it has never been doubted, but has always been considered by this court, not only that it has the authority, but that it was its duty to set aside a verdict where that verdict was *contrary to the evidence,* or unsupported by it, though it was with reluctance that the court will disturb a verdict where there is any evidence to sustain it. (citations omitted)."

*Id.,* at 628–629. Thus, from a careful consideration of numerous cited cases, Judge Willson deduced the following "rules of practice governing this Court," *viz:*

"First. Where the evidence is conflicting, and there is sufficient, if believed, to prove the case of the State, the jury being the exclusive judges of the credibility of the testimony, their verdict will not be set aside *unless it is clearly appears to be wrong.*

Second. Where there is no testimony to support it, the verdict will be set aside.

Third. Where the evidence is insufficient to rebut the presumption of innocence, the verdict will be set aside.

Fourth. Where the verdict is *contrary to the weight of the evidence* it will be set aside."

*Id.,* at 630.[5] Under applicable law the court conducted a thorough analysis of detailed facts, concluding that the State failed to prove the *corpus delicti* in this murder case. *Id.,* at 637.

Thereafter, the Court continued to follow the lead of Judge Willson in *Walker v. State,* supra. See, e.g., *Grimmett v. State,* 22 Tex. App. 36, 2 S.W. 631, at 634 (1886) (Willson, J.) (where evidence is sufficient to support verdict, and verdict is *not* against great weight of evidence, court will not set aside conviction); *Dickey v. State,* 21 Tex.App. 430, 2 S.W. 809, at 810 (1886) (White, P.J.) (from review of conflicting evidence, court not satisfied with sufficiency; "conviction upon such testimony not permitted to stand as precedent in such cases"); *Wilkerson v. State,* 21 Tex.App. 501, 2 S.W. 857 (1886) (White, P.J.) (considered in light of testimony, verdict and judgment against weight of evidence); *McLaren v. State,* 21 Tex.App. 513, 2 S.W. 858 (1886) (Willson, J.) (conviction not only not supported by, but is against evidence and law, where explanation by accused not shown to be false, all evidence tends strongly to establish its truth, and is corroborated by his witness); *Phipps v. State,* 22 Tex.App. 621, 3 S.W. 761, at 763 (1886) (White, P.J.) (detailed review of all testimony reveals judgment "is wholly by [sic], and contrary to, the evidence"); *Montgomery v. State,* 16 S.W. 342 (Tex.Ct.App.1891) (White, P.J.) (because evidence wholly insufficient to warrant conviction, and verdict against great preponderance of evidence, judgment reversed and cause remanded); *Lasky v. State,* 18 S.W. 465 (Tex. Ct.App.1892) (Davidson, J.) (since verdict and judgment not supported by the evidence but "clearly against the same," judgment reversed and cause remanded).[6]

5. In context of his explanation, *First* and *Fourth* rules are but variations on a "factual sufficiency" theme. *First* involves *"conflicting* evidence," some of which is sufficient to sustain the State's burden, so that the verdict will *not* be set aside *unless* in light of all the evidence it clearly appears to be wrong and makes manifest that an injustice has be done defendant. *Fourth* involves the simpler situation where the verdict is so plainly contrary to the *weight* of evidence that it *must* be set aside.

6. To be noticed is that all cases but the last two cited in the paragraph above were delivered in 1886, roughly midway in the life of the court of appeals. *Montgomery,* handed down in June 1891, and *Lasky,* in February 1892 (near end of its final term) are cited to demonstrate a fair measure of consistency in its understanding of "what it means to reverse 'upon the facts.'"

## II

### A

The former court of appeals became the Court of Criminal Appeals by virtue of the 1891 constitutional amendments and implementing legislation revamping the judicial appellate system. Essentially stripped of its limited civil jurisdiction and merely renamed, the Court convened its 1892–1893 term with the same "appellate jurisdiction" in criminal cases as before, *viz:*

> "The court of criminal appeals shall have appellate jurisdiction ... in all criminal cases of whatever grade, with such exceptions and under such regulations as may be prescribed by law."

Article V, § 5. The legislation tracks predecessor statute. See Act 1892, 22nd Leg., 1st C.S., Ch. 16, p. 34, §§ 5, 24, 10 Gammel's General Laws 398 ff; Article 905, C.C.P. 1895 (when cause remanded).

Accordingly, the Court also continued to exercise its appellate jurisdiction to determine "legal sufficiency" as well as to weigh and decide "factual sufficiency." See opinions in the first month of its new term, all written for the Court by Presiding Judge Hurt without dissent: *Rollins v. State*, 20 S.W. 358 (Tex.Cr.App.1892) ("We are of opinion that *[the evidence] is amply sufficient,* and hence the judgment is affirmed.") and *Anderson v. State*, 20 S.W. 358, at 359 (Tex. Cr.App.1892) ("We are of opinion that *the evidence does not establish with reasonable certainty* the fact [of the offense charged]; wherefore, the judgment is reversed, and the

cause remanded."). Compare: *Foresythe v. State*, 20 S.W. 371 (Tex.Cr.App.1892), *viz:*

> "Under the above state of facts, does the testimony establish the guilt of defendant to a reasonable certainty? We think not. We believe that the *verdict is against the great weight of the testimony;* that every inculpatory fact has been met by the testimony for the defendant and made to consist with his innocence, except [certain testimony] ... we believe to be a mistake, and a very reasonable and common one. Judgment is reversed."

*Id.,* at 373. The fortuitous juxtaposition of those three opinions demonstrate beyond a reasonable doubt that the Court well understood separate concepts of "legal sufficiency" and "factual sufficiency," and that it was capable of properly applying each, or both, as deemed appropriate in a given case.[7]

### B

Nonetheless, the State, through its State Prosecuting Attorney, would have it that some thirty years around the turn of the century (1891–1920) was "a rather chaotic period of our sufficiency jurisprudence" during which both the court of appeals and the Court were "neither clear nor consistent" in their understanding the true meaning of "power to reverse 'upon the facts;'" failing to recognize "two different standards for conducting a sufficiency review," they "*always* applied a *single* (though ambiguous and fluctuating) standard of review ... upon finding the evidence insufficient[.]" State Prosecuting Attorney's Supplemental Brief, at 10.[8]

---

7. Subsequently, confronting conflicting evidence, the Court conducted a *First* rule analysis under *Walker, supra,* "a careful examination of the whole case, in light of the record, considering the facts as they appear in the statement of facts," but "would not feel authorized to set aside the verdict of the jury and reverse the case[.]" *Jackson v. State,* 56 Tex.Cr.R. 28, 117 S.W. 990, at 992 (1909) (Ramsey, J.). Compare: *Gay v. State,* 56 Tex.Cr.R. 12, 118 S.W. 534 (1909) (Ramsey, J.) (Court opted to reverse under *Third* rule, "we do not believe, on full reflection, that we would be justified in sustaining this conviction and establishing the precedent of sustaining a conviction on such *inconclusive and vague* testimony [by State's only witness]"); see n. 4, *ante* (cases following *Tollett, supra*).

8. That "chaotic" appellate condition is, according to the State, reflected in four opinions, namely, *Montgomery v. State, supra* (White, P.J.); *Mitchell v. State,* 33 Tex.Cr.R. 575, 28 S.W. 475 (1891) (Hurt, P.J.); *Murphy v. State,* 65 Tex.Cr.R. 55, 143 S.W. 616 (1912) (Harper, J.); *Smith v. State,* 85 Tex.Cr. 355, 212 S.W. 660 (1919). We examine them *seriatim,* keeping in mind the legislative confirmation that constitutional "appellate jurisdiction" empowers the court to "revise the judgment in a criminal case ... upon the facts," and also to reverse the judgment when "the verdict is contrary to the weight of the evidence." See *ante,* at 137–140.

*Montgomery* is a simple case of alleged "unlawfully branding a horse," in which the assistant district attorney "ingeniously confesses that 'the evidence is weak,'" and the court responds,

Having examined in the margin the cases submitted to support those notions and comments, one must conclude the State is mistaken. The entire line of cases reviewed *ante* demonstrate that from the beginning "appellate jurisdiction" included the power to examine "factual sufficiency," and, further, that every appellate court with criminal jurisdiction recognized, acknowledged and utilized that power, albeit "reluctantly exercised," or without identifying it as such, or along with a determination of "legal sufficiency" as well. See *ante*, at 137, 137–138, 138–140 and notes 4–6.

To bolster its theory the State advances the proposition that "a central tenet of sufficiency review was solidified" in *Jolly v. State* [87 Tex.Cr.R. 288, 221 S.W. 279 (1920)]. Supplemental Brief, at 10.[9] The statute and

"The *great preponderance of the evidence* shows conclusively that the animal was branded at the instance and request of [another]," that appellant "did not brand the animal himself," and that his testimony is corroborated by other witnesses. Accordingly, the appellate court not only found the evidence was "wholly insufficient to warrant the conviction," but also concluded the verdict was "*against the great preponderance of the evidence;*" thus, as it would have for either discrete reason, the judgment was reversed and the cause remanded. That is an exercise of both powers, but not "ambiguous and fluctuating."

*Mitchell,* is a common case of alleged "burglary with intent to commit rape," in which the prosecution proved a burglarious entry but simply failed to show it was made with intent to commit rape, i.e., that accused "intended to gratify his lust by force." The court is not bound by the law elsewhere to affirm the judgment "if there is any evidence to support it;" if guilt not proved to "*a reasonable certainty,* it is the duty of this court to reverse the judgment." *Id.,* 28 S.W. at 476. There was no competing evidence for the court to consider and weigh; thus "factual sufficiency" was not an issue.

*Murphy* is a touchy case of alleged seduction, in which accused raised in his motion for new trial, *inter alia,* "sufficiency of the evidence to sustain the conviction." *Id.,* 143 S.W. at 619. After carefully reviewing all relevant evidence pro and con, Judge Harper writing for the court in his fashion, made an enigmatic statement the State characterizes as "employing 'great preponderance' formulation," *viz:*

"While the jury is the judge of credibility of the witnesses and the weight to be given the testimony, yet we are authorized to look to see if there is any testimony, or that it is so slight as not to authorize a finding therein against the great preponderance of the testimony." *Id.,* 143 S.W. at 620. Apparently the State is correct, for Judge Harper then proceeds to contrast certain perceived weaknesses in the prosecution against strengths in the defense, to conclude that "we do not feel that the evidence justifies us in permitting this verdict to stand," in that "it would seem that perhaps an injustice has been done." *Ibid.*

We do not agree, however, with its assertion that the court "held" it may reverse "upon finding either 'no evidence' or 'slight evidence.'" Thereafter, Judge Harper wrote, "Taking the record as a whole, and [that the testimony failed to show certain germane matters], we deem the evidence *insufficient* to support a case of seduction." *Ibid. Murphy* represents again an instance of the Court determining both "factual sufficiency" and "legal sufficiency" adverse to the State. Cf. *Ramirez v. State,* 149 Tex.Cr.R. 13, 191 S.W.2d 34, at 36 (1945) (evidence not sufficient to establish guilt of seduction beyond reasonable doubt).

*Smith* is another burglary case, this one of a store. About it the State notes only "'great weight' language." The evidence is circumstantial, and the sole contention is that "the evidence is insufficient to support the verdict." For the Court, Judge Lattimore reviews all the evidence and explains why it was sufficient "to predicate the verdict of guilty." Then in his inimitable style Judge Lattimore gratuitously adds, "This court will not reverse unless there is such a manifest lack of evidence as to make it apparent that the verdict was the result of prejudice, *or* that such verdict is *against the great weight of the evidence.*" *Id.,* 212 S.W. at 661. At least in 1919 the Court again acknowledged that indeed it does have the power to determine and to reverse for "factual insufficiency."

In sum both "sufficiency" standards were, as former Presiding Judge Onion was wont to put it, "alive and well" during the three decades of cases surveyed by the State.

9. The State alludes to phrases underscored in the first paragraph of a passage in the opinion, *viz:*

"On the whole, the facts are not such as would warrant us in giving sanction to the verdict which condemns the appellant.... His punishment, in the absence of proof which, *tested by the legal measure,* establishes his guilt beyond a reasonable doubt, is not to be sanctioned. The sanctity of the verdict of the jury is such that it must not lightly be annulled in any case, but the law does not contemplate that one shall suffer because of the verdict when the evidence, *viewed in its strongest light from the standpoint of the state,* fails to make his guilt reasonably certain. In such a case, both by statute and precedent, it is incumbent upon this court in the performance of its duty to order another trial. C.C.P. art. 939; *Mitchell v. State,* 33 Tex.Cr.R. 575, 28 S.W. 475." Accordingly, the court concluded:

"Because the evidence does not establish the guilt of appellant with *reasonable certainty,* the judgment is reversed and the cause remanded."

case cited by the Court go to its duty to order another trial in the premises; otherwise Judge Morrow cites no authority for the proposition claimed by the State, nor need he. Also observe that during the period from 1876 to 1920 decisions of the Court discussed *ante* never once declared that in determining sufficiency of the evidence to support the judgment, former articles 870, C.C.P. (1879); 905, C.C.P. (1895); 939, C.C.P. (1911), required an appellate court to view evidence in terms of "the light most favorable to the verdict (or the state)." Those observations are made, not to quibble about what has become accepted jargon in this Court, but to suggest the origin and intendment of that more modern phrase in this jurisdiction.

In *Jolly v. State*, supra, 221 S.W. at 281, before entering into the discussion quoted above Judge Morrow wrote, "The State's evidence, *accepting it as true*, which *must* be done, falls short...." In context that phrase is but another way of conveying the same meaning as the one more commonly and longer used by our courts, *viz:* "sufficient [evidence], *if believed*, to support the finding [of guilt]." *Walker v. The State*, supra, at 629. See, e.g., *Speer v. State*, 57 Tex.Cr.R. 297, 123 S.W. 415, at 417 (1909) (evidence, *if believed*, to sustain jury verdict); *Thurston v. State*, 58 Tex.Cr.R. 308, 125 S.W.

31, at 32 (1910) (evidence which, *if believed*, would show guilt; *Coleman v. State*, 58 Tex. Cr.R. 451, 126 S.W. 573, at 574 (1910) (testimony, *if believed*, justified conviction); *Smith v. State*, 60 Tex.Cr.R. 81, 131 S.W. 313, at 314 (1910) (evidence sufficient to support verdict, *if testimony of witnesses to be believed* ); *Martinez v. State*, 61 Tex.Cr.R. 29, 133 S.W. 881, at 882 (1911) (testimony, *if believed*, justifies jury verdict of guilty); *Oates v. State*, 67 Tex.Cr.R. 488, 149 S.W. 1194, at 1198 (1912) ("*if State's evidence is to be believed*, jury justified in finding guilt," and on *ad infinitum* to *Banks v. State*, 510 S.W.2d 592, at 595 (Tex.Cr.App.1974) (Court must view the evidence *in light most favorable to verdict*; in doing so, verdict will be sustained if there is "evidence which, *if believed*, shows the guilt of the accused").

In short, to say the prosecution presented such testimony and evidence which, "if believed," supports the verdict is to view it in "the light most favorable," and thus sufficient to support the verdict with "reasonable certainty." The *Jolly* court merely used a phrase equivalent in meaning to that which courts traditionally utilized in assaying the evidence for "legal sufficiency." [10]

But, again, as the court explained in *Walker v. The State* and iterated in other cases, engaging in that exercise does not rule out

*Id.,* at 281. We note, not so incidentally, *appellant did not present any evidence.* The Court thus reversed "upon the facts" adduced by the prosecution and remanded pursuant to former articles 938 and 939, C.C.P. 1911. That is, the Court did not conduct a review for "factual sufficiency," there being no competing evidence and thus no claim the verdict was "contrary to the weight of the evidence." Compare: *Third* rule (evidence insufficient to rebut presumption of innocence) with *First* and *Fourth* rules formulated by the court in *Walker v. The State*, supra, at 630.

**10.** In *Green v. State*, 97 Tex.Cr.R. 52, 260 S.W. 195 (1924), the Court reviewed evidentiary sufficiency in rape case under former article 939, C.C.P. 1911, to reverse the judgment "upon the facts," because "it is our duty to do so when there is not sufficient evidence to support it"— "when the evidence viewed in its strongest light from the standpoint of the state, fails to make guilt *reasonably certain*." *Id.,* 260 S.W. at 196, citing *Jolly v. State*, supra; *Pierson v. State*, 93 Tex.Cr.R. 242, 246 S.W. 1041 (1923); *McCollum v. State*, 93 Tex.Cr.R. 235, 247 S.W. 283 (1923); *Rochetszky v. State*, 94 Tex.Cr.R. 423, 251 S.W.

232 (1923)—all also discussed by the State Prosecuting Attorney in Supplemental Brief, at 10–11.

In *Rochetszky v. State*, supra, Morrow, P.J., wrote on original submission that under article 939 "this court may reverse a judgment upon the law as well as upon the facts." He explained: "... While it is rarely done, and is never done, except for the strongest reasons, yet this court has on many occasions found it necessary to set aside the judgment, where the verdict was *manifestly wrong*, and it is made clear that an *injustice was done* to the accused. See *Walker v. State*, 14 Tex.App. 609, and other cases listed in Vernon's Texas Crim.Stat. vol. 2, p. 689, note 14."
*Id.,* 251 S.W. at 233. That formulation is a restatement of *First* rule Judge Willson distilled from the cases in *Walker*, at 629–630, *viz:* the evidence is conflicting but some sufficient, if believed, to prove the case, still verdict may be set aside where it is manifest that it is wrong and clear that an injustice has been done. On rehearing Judge Hawkins pointed out that the court did not announce a new rule "but applied an old one," as indeed it did.

also reviewing the evidence for "factual sufficiency" as well. See 138–140, *ante*. Indeed, it is now axiomatic:

"A reversal based on the *weight of the evidence,* moreover, can occur only *after* the State both has presented *sufficient evidence* to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment." *Tibbs v. Florida,* 457 U.S. 31, at 42–43, 102 S.Ct. 2211, at 2218, 72 L.Ed.2d 652 (1982).

### C

The State cannot accept that, having found "legal sufficiency" to support the verdict, an appellate court still has power to proceed

---

**11.** The Court made clear it was construing former article 706, C.C.P.1925 (jury exclusive judge of facts and weight of testimony), and article 848, *id.* (revision upon law as well as facts). *Franklin v. State,* supra, 183 S.W.2d at 574.

First, under headnote [3] it alluded to the "consistent holding" that the Court will reverse "*only* when the testimony, viewed in its strongest light from the standpoint of the State, *fails* to make the guilt of the accused *reasonably certain.*" For that holding the Court relies on *Mason v. State,* 108 Tex.Cr.R. 452, 1 S.W.2d 283 (1928), and cites 18 Tex.Jur., 420, § 299. *Ibid.*

*Mason v. State,* supra, cites only the ubiquitous *Jolly v. State,* supra, and *Taylor v. State,* 87 Tex.Cr.R. 330, 221 S.W. 611 (1919). *Jolly,* it will be recalled, reviewed *undisputed* testimony for "reasonable certainty," concluding under former article 939, C.C.P.1911, *Third* rule of *Walker,* supra, the verdict must be set aside in that the State's evidence was found insufficient to rebut the presumption of innocence. See note 8, *ante. Taylor v. State,* supra, however, dealt with uncontroverted evidence, *conflicting* evidence and claimed impeached testimony; Judge Morrow pointed out that under former article 939, C.C.P. 1911, where a properly charged jury finds accused guilty, a reviewing court should not supplant a jury finding with its own, "*unless* it is able to point to weaknesses, omissions, or inconsistencies in the evidence which destroy its cogency;" he opined the court was unable to do so in that case. *Id.,* 221 S.W. at 613–614. That is also essentially a *Third* rule review under *Walker,* the Court concluding in effect the evidence was insufficient to rebut the presumption of innocence.

Therefore, neither *Jolly* nor *Taylor* treated article 939 under aspects of its *First* or *Fourth* rule, i.e., "factual sufficiency." *Walker,* at 630.

It follows that *Mason* did not address rules *First* or *Fourth* either; indeed it does not even purport to do so. See 1 S.W.2d at 284 (Hawkins, J., on motion for rehearing) ("there is testimony here sufficient to support [jury's] verdict").

---

further to review "factual sufficiency" where appropriate. It discusses more cases during the ensuing period to conclude that while there was "the occasional *inconsistency* along the way," this Court resolved "those apparent contradictions" in *Franklin v. State,* 147 Tex.Cr.R. 636, 183 S.W.2d 573 (Tex.Cr.App.1944) (Commissioner Davidson). Supplemental Brief, at 12–13. But since the Court conducted a "legal sufficiency" review pursuant to former article 848, C.C.P. 1925, a *Third* rule review under *Walker,* supra, it "resolved" nothing about determining "factual sufficiency." [11] Moreover, in then declaring globally that the Court "never reversed a judgment of conviction upon the facts of the case where the *testimony of the State* showed

In *Franklin* the Court was concerned with asserted *insufficiency* of evidence to convict; the State proved the offense of carrying a pistol, and appellant in effect admitted the alleged act, producing uncontroverted evidence supporting a legal defense (putative peace officer or game warden). *Franklin* thus presents a problem the *Mason* court did not confront in that accused there simply denied committing an alleged rape. The real question in *Franklin* is whether the State rebutted the defense beyond a reasonable doubt. See V.T.C.A. Penal Code, §§ 2.03 & 46.03 (articles 483 & 484, P.C.1925). (To the extent such is a matter defendant is required to prove, under *Meraz v. State,* 785 S.W.2d 146 (Tex.Cr.App.1990), the result might well be different; see 144–147, *post.*)

In headnote [4], the Court acknowledged having reversed causes because "unwilling to let the judgment of conviction stand under the facts," pointing out that the action taken was "based upon the weakness of the State's testimony as showing the guilt of the accused." *Id.,* at 574. The Court cited *Lozano v. State,* 138 Tex.Cr.R. 549, 137 S.W.2d 1031 (1940) (Hawkins, P.J.) (because evidence *insufficient* to show intent to kill in alleged assault with intent to murder, Court's duty to reverse); *Villareal v. State,* 140 Tex.Cr.R. 675, 146 S.W.2d 406, & 409 (1941) (Beauchamp, J.) (Court doubts conclusion of physician, in conflict with testimony, sufficient to prove essential facts, and in view of all undisputed facts and circumstances in capital murder case; quotes extensively and follows *Taylor v. State,* supra: "weaknesses," "omissions" and "inconsistencies"). Thus, *Villareal* is yet another decision under former article 848, C.C.P.1925, *Third* rule in *Walker,* supra.

In sum, *Franklin* decides only "legal sufficiency" in a context of a rejected defense, and nothing written or cited under headnotes [3] & [4] denies or denigrates the constitutional power and authority of the Court to conduct a review for "factual sufficiency."

the guilt of the accused," Judge Davidson apparently was less than thorough in his research.[12] Moreover, the list of twelve followings in Shepard's Texas Citations is not all that impressive: seven mention, in whole or in part, the proposition in headnote [3], but three of those seven are in dissents by former Presiding Judge Woodley, generally admonishing the majority for failing to adhere to it; the remaining five cites pertain to treatment of other matters in *Franklin* not at all germane to the issue here.[13]

Convinced that *Franklin* cannot be read to rule out a "factual sufficiency" review by an appellate court, and believing that its constitutional power to conduct such a review is not lost through pretermission, let us now move fast-forward to examine and consider more recent developments.

## III

### A

In *White v. State,* 591 S.W.2d 851 (Tex.Cr. App.1979), the Court was exercising its appellate jurisdiction on direct appeal in a capital murder case with punishment assessed at life in which an ancillary determination of *competency to stand trial* was implicated. See *Jackson v. State,* 548 S.W.2d 685, at 690 (Tex.Cr.App.1977) (court will review pretrial hearing on competency when raised and presented in appeal from trial on merits). Defendant contended, *inter alia,* the verdict of *competency* was contrary to the great weight and preponderance of evidence, and manifestly wrong—in other words, "factually insufficient." *White v. State,* supra, at 852.

Writing for a unanimous Court, former Presiding Judge Onion perceived that in effect defendant would have the Court "consider this ground as a fact issue question rather than a law issue question," and to that he immediately responded, *viz:*

"... This Court has no jurisdiction to do what appellant requests as would a Court of Civil Appeals because of a somewhat peculiar constitutional provision applicable to Courts of Civil Appeals. Article V, § 6 (Court of Appeals) states in part:

'Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error ...' See also Article 1820, V.A.C.S., Texas Rules of Civil Procedure 451, 453, 455."

*Id.,* at 855. That is to say, the mere fact that courts of appeals are empowered to make findings as to "factual sufficiency" somehow precluded this Court from doing so in a 1979 case over which it then possessed exclusive "appellate jurisdiction" on direct appeal.

Then reviewing civil jurisprudence on the matter and contrasting it with *unidentified* criminal law provisions, the Court summarily concluded:

"[T]his court has no fact jurisdiction as do the Courts of Civil Appeals, and cannot 'unfind' *a vital fact finding by a jury.* Since we do not have the jurisdiction to pass upon the great weight and preponderance of the evidence, appellant's contention is overruled."

*Id.,* at 856. And in *Martin v. State,* 605 S.W.2d 259 (Tex.Cr.App.1980), writing for the Court on motion for rehearing, former Presiding Judge Onion extended *White* to

---

12. For example, he did not mention a relatively recent reversal in *Pittman v. State,* 140 Tex.Cr.R. 264, 144 S.W.2d 569 (1940) (Commissioner Krueger) (evidence supported verdict finding accused guilty of assault with intent to murder; yet the Court approved an opinion holding verdict was *"against the uncontroverted testimony"* showing self-defense). *Id.,* at 569 & 560. Also see and compare *Ammann v. State,* 145 Tex.Cr.R. 34, 165 S.W.2d 744 (1942) (Commissioner Davidson) (conviction for assault with intent to murder reversed where accused made strong case for self-defense); opinion couched holding in terms of "the facts are insufficient to authorize the conviction," adding that while Court was always "hesitant to disturb the verdict of the jury

..., where evidence fails to measure up to that required by law ... it becomes our duty to say so." *Id.,* 165 S.W.2d at 746.

13. During the late Forties and early Fifties, the Court may well have been influenced politically by, and reacted pragmatically with sensitivity to, the contemporaneous storm of criticism over reversals for perceived "technicalities" exemplified by, e.g., *Gragg v. State,* 148 Tex.Cr.R. 267, 186 S.W.2d 243 (1945), and *Ex parte Gragg,* 149 Tex.Cr.R. 10, 191 S.W.2d 32 (1945); *Northern v. State,* 150 Tex.Cr.R. 511, 203 S.W.2d 206 (1947). See *Vaughn v. State,* 607 S.W.2d 914, at 916, nn. 1 & 2 (Tex.Cr.App.1980).

proceedings involving a *sanity* issue in which the trial court alone is fact finder. *Id.*, at 261.

Thus without so much as a cursory examination of germane determinative pronouncements by this Court to the contrary, see Part I B, Part II A & B, *ante*, as if by *ipse dixit* the Court purported to deny the appellate jurisdiction, power and authority it previously found, delineated, confirmed and exercised in appropriate cases. *Ibid.* See also *Ex parte Watson*, 606 S.W.2d 902, at 905–906 (Tex.Cr.App.1980) (Court constrained to follow *White* ); *Combs v. State*, 643 S.W.2d 709, at 716 (Tex.Cr.App.1982) (*White* and *Watson* settled that this Court lacks jurisdiction to pass upon weight and preponderance of evidence).

Furthermore, the *White* court surely failed to consider the venerable Old Code provision continued through all codes of criminal procedure to and including Article 44.25. C.C.P. 1965, *viz:*

"The Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as *upon the facts.* A cause reversed because the verdict is contrary to the evidence shall be remanded for new trial."

As its internal construction and caselaw construing the statute make clear, the first sentence embraces both findings of "legal sufficiency" and "factual sufficiency," as they came to be known; the second merely admonishes that when judgment is reversed for the latter, the cause must be remanded.[14]

In *Combs v. State*, supra, the Court was deciding the question of its own "jurisdiction to review sufficiency questions once they have been passed on by the Courts of Appeals." *Id.*, at 714. Upon reviewing Article V, § 6, before and after the 1981 amendment, Article 1820, V.A.C.S. as amended, and civil cases deemed relevant, the Court alluded to *White* and *Martin* and stated—albeit erroneously—"our determinations of sufficiency of the evidence have *never* involved passing on the weight and preponderance of the evidence." *Id.*, at 716. Just as erroneously the *Combs* court said, "We perceive no other standard may be utilized by the Court of Appeals in reviewing criminal convictions other than sufficiency of the evidence to support the conviction." *Id.*, n. 1. Both statements are flat wrong in light of power inherent in successive constitutional grants of "appellate jurisdiction" in criminal cases to the Supreme Court, e.g., *Republic v. Smith*, supra; the former court of appeals,

14. With the advent of *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), mandating an acquittal when a reviewing court has determined the evidence to be *"legally insufficient,"* this Court noted that the second sentence in Article 44.25, *ante*, is "to the extent of conflict with the federal constitutional requirements of jeopardy protection expressed in [those] decisions cited above, unconstitutional." *Johnson v. State*, 571 S.W.2d 4, at 6, n. 2 (Tex.Cr.App.1978); *accord: Ex parte Colunga*, 587 S.W.2d 426, at 427, n. 2 (Tex.Cr.App.1979).

When the Legislature revamped affected statutes and code provisions to restructure appellate courts and jurisdiction pertaining to criminal appeals, it revised Article 44.25 by inserting "courts of appeals or" in the first sentence and deleting entirely the second sentence. Acts 1981, 67th Leg., Ch. 291, p. 817, § 134. It thus removed the legislative direction to remand for new trial, presumably with *Johnson v. State*, supra, in mind, believing it to be unconstitutional under *Burks–Greene.* See *Bigley v. State*, 865 S.W.2d 26 (Tex.Cr.App.1993) (Clinton, J., dissenting, at 32–33). The *Johnson* court, however, pronounced Article 44.25 unconstitutional only

"to the extent of conflict" with *Burks–Greene.* There is no jeopardy or other known constitutional problem where the court of appeals or this Court reverses for *"factual insufficiency"* under Article 44.25, as amended. *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (reversal of conviction because "against the weight of the evidence" as opposed to "insufficiency of the evidence" will not bar retrial).

(In his dissenting opinion at 153–154 and note 4 our Presiding Judge reviews the foregoing incidental observations and comments, to find my "position [today] is inconsistent with the position" he "apparently" believes I took in my dissenting opinion in *Bigley v. State*, supra, at 32–33. But the latter is more precis than position, uncritically reporting what *Johnson* decided, as part of predicate to making a point going to the larger issue then under consideration. The first paragraph above is a reprise of the recitation in *Bigley;* the second is but an extension, essentially surmising a basis for legislative action in 1981, and opining that Article 44.25, as thus amended, poses no constitutional problem to an appellate remand upon a finding of *"factual insufficiency,"* or to reforming the judgment to an acquittal for *"legal insufficiency"* as in *Johnson.* Indeed, it confirms both dispositions.)

e.g., *Walker v. State*, supra; this Court, e.g., *Foresythe v. State*, supra; and lately to the reconstituted courts of appeals.

The Court went on to compare the rule of prior decisions, e.g., *Banks v. State*, 510 S.W.2d 592, at 595 (Tex.Cr.App.1974 (verdict must be sustained where there is any evidence which, if believed, shows guilt of defendant), with the test formulated in *Jackson v. Virginia*, 443 U.S. 307, 318–309, 99 S.Ct. 2781, at 2788–2789, 61 L.Ed.2d 560. The Court summed up, *viz:*

> "Thus, sufficiency of the evidence to sustain criminal convictions as determined by this Court is a question of law under both state and federal standards. It is not a 'question of fact' under Art. 5, Sec. 6, of the Texas Constitution. We conclude that this Court has jurisdiction to review the sufficiency of the evidence to support a conviction even though that question has been addressed by the Courts of Appeals."

*Id.*, at 717. The State Prosecuting Attorney accurately characterizes *Combs* as a "now-discredited" source of "considerable confusion." Supplemental Brief, at 19.[15]

### B

The opinions of the Court in *White* and especially *Combs* also came under critical examination by some courts of appeals which, after all, long have been and are routinely determining both "legal sufficiency" and "factual sufficiency." Chronologically the cases with ultimate dispositions by this Court are:

*Schuessler v. State*, 647 S.W.2d 742 (Tex. App.—El Paso 1983) (jury verdict rejecting *insanity* defense contrary to great weight and preponderance of evidence), *reversed* 719

S.W.2d 320 (Tex.Cr.App.1986) ("factual sufficiency" wrong standard of review; evidence sufficient to support rejection of defense);

*Minor v. State*, 653 S.W.2d 349, at 351 (Tex.App.—San Antonio 1983) (viewed most favorably, evidence sufficient to support *conviction* for aggravated assault with deadly weapon) (Cadena, C.J., concurring: nature of judgment rendered by court of appeals in *Combs* creates justifiable concern that grant of its jurisdiction conclusively to determine "factual sufficiency" may be subject to restriction), PDR *refused* with per curiam opinion, 657 S.W.2d 811, at 812 (Tex.Cr.App.1983) (effect of certain constitutional and legislative changes effective in 1981 never construed by this Court still open question);

*Van Guilder v. State*, 674 S.W.2d 915 (Tex. App.—San Antonio 1984) (*White* is authority that courts of appeals have jurisdiction of fact questions in criminal cases; left open in *Minor* is conclusiveness of decisions on such questions; no evidence to support implied finding of *sanity*, and verdict so contrary to great weight and preponderance of evidence as to be clearly wrong), *affirmed* 709 S.W.2d 178 (Tex.Cr.App.1985) (but devising from *Jackson v. Virginia* innovative standard for · review of affirmative defense, *viz:* court of appeals to consider evidence in light most favorable to implicit finding by jury, and then determine from all related evidence whether any rational trier of fact could have found defendant failed to prove defense by preponderance of evidence; may not reweigh or reclassify the evidence).

*Arnold v. State*, No. 13.83–050–CR (Tex. App.—Corpus Christi, delivered January 31, 1984) (jury finding of *competency* to stand

---

**15.** Both *White* and *Combs* focused on what is known as the "factual conclusivity clause" in Article V, § 6, as if it somehow was a grant of appellate jurisdiction and power. That it is not was clearly explained by the Supreme Court in *Cropper v. Caterpillar Tractor Company*, 754 S.W.2d 646 (Tex.1988), *viz:*

> "The Texas Constitution confers upon the courts of appeals 'appellate jurisdiction ... under such restrictions and regulations as may be prescribed by law,' and further provides that 'the decision of said courts shall be conclusive on all questions of fact brought to them on appeal or writ of error.' [citation omitted].

These two clauses have *independent significance,* and have *quite different consequences* upon the allocation of jurisdiction between this court and the intermediate appellate courts. The *former* operates as a *general grant of 'appellate jurisdiction,'* and is in fact the only clause in Article V which purports *to vest judicial authority in the intermediate appellate courts.* The *latter,* which will referred to as the 'factual conclusivity clause,' *functions* not as a grant of authority to the courts of appeals but *as a limitation upon the judicial authority of this court.* *Choate v. San Antonio & A.P. Ry. Co.,* 91 Tex. 406, 44 S.W. 69 (1898)."
> *Id.,* at 648.

trial so against great weight of preponderance of evidence as to be manifestly unjust), *reversed* 719 S.W.2d 590, at 593 (Tex.Cr.App. 1986) (under *Van Guilder* viewing evidence in light most favorable to verdict a rational trier of fact could easily have found evidence of incompetency insufficient);

See also *Hill v. State,* 718 S.W.2d 751 (Tex.App.—Tyler 1985) (trial court abused discretion in revoking probation where *finding of ability to pay* fees and cost so contrary to evidence as to be manifestly wrong and unjust), *reversed* and remanded 719 S.W.2d 199 (Tex.Cr.App.1986) (since *Van Guilder* disapproved appellate use of "factual sufficiency" standard, cause remanded for reconsideration).[16]

We need not dwell on *Van Guilder* and progeny, however; the Court overruled them and disavowed footnote 1 in *Combs. Meraz v. State,* 785 S.W.2d 146, at 154 (Tex.Cr.App. 1990).

The late Judge Duncan, writing for a unanimous Court (three judges concurring in result), enumerated reasons why *Van Guilder* was wrongly decided, *id.,* at 152–153, and demonstrated that the "factual conclusivity clause" in Article V, § 6, has remained a constitutional provision for nearly one hundred years, approved by voters through four elections over those years, *id.,* at 153–154, to conclude:

"The court of appeals is therefore constitutionally given the authority to determine if a jury finding is against the great weight and preponderance of the evidence and if this is improper it is up to the people of the State of Texas to amend the Constitution."

*Id.,* at 154. After confessing error in *Van Guilder,* the Court accordingly proceeded further to conclude:

"... [T]he 'factual conclusivity clause,' within Art, V, § 6, operates to limit our jurisdiction and confers conclusive jurisdiction on the courts of appeals to resolve questions of weight and preponderance of the evidence adequate to prove a matter that the defendant must prove. Moreover, when the courts of appeals are called upon to exercise their fact jurisdiction, that is whether the appellant proved his affirmative defense or other fact issue where the law has designated that the defendant has the burden of proof by a preponderance of the evidence, the correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. Therefore, *Van Guider v. State,* supra; *Schuessler v. State,* supra; *Arnold v. State,* supra; and their progeny are overruled. Furthermore, footnote 1 in *Combs v. State,* supra, is disavowed."

*Id.,* at 155.[17] It is important to notice that the *Meraz* court pointedly "express[ed] no

---

16. Before *Van Guilder* was formally reported, presumably because the publisher was awaiting outcome of application for certiorari, former Presiding Judge Onion and two others urged in vain that the opinion be reconsidered. See *Baker v. State,* 707 S.W.2d 893, at 895 ff (Tex.Cr.App. 1986). Certiorari was denied June 9, 1986. *Id.,* at 178. *Schuessler* was delivered in October 1986; again the same three judges advanced an analysis from a different perspective in an opinion by this writer, 719 S.W.2d at 330 ff; the late Judge Teague dissented without opinion. *Ibid.* The latter turned out to be a harbinger of the unlamented demise of *Van Guilder,* et al. See *post.*

See also dissents in *Hill v. State,* supra, at 204 (Due Process Clause prohibits *affirming* conviction unless *Jackson v. Virginia* satisfied; neither it nor Double Jeopardy Clause bars state appellate court from *reversing* conviction if verdict or finding of guilty against great weight and preponderance of evidence), and *Arnold v. State,* supra, at 594 (given rash of awkward applications of *Van Guilder* and division among judges, Court must formulate workable standard of review for affirmative defenses and similar matters requiring proof by preponderance of evidence).

17. Judge Duncan went on to opine that the ultimate holdings were "actually dictated by *stare decisis*" in that while the Court "properly concluded it did not have the authority to review [all the evidence for factual sufficiency,]" certain "observations" made in the *White* case are "compelling" and "dictate the result we have reached." *Id.,* at 155.

With deference, Judge Duncan and thus the Court did not take into account that *White* was decided on direct appeal in 1979—some two years before Article V, § 6, granted appellate jurisdiction in criminal cases to courts of appeals. Thus the *White* court possessed the same "appellate jurisdiction" vested by the Constitution of 1876 and by amendments in 1891. And

opinion of the role of the court of appeals in reviewing sufficiency of the evidence relative to the proof of *elements* of the offense." *Id.* at 156. *Bigby v. State,* 892 S.W.2d 864 (Tex. Cr.App.1994) a capital murder case in which an insanity defense was rejected and the death penalty was assessed, thus does not implicate the role of the court of appeals at all.

## IV

### A

" . . . It is perfectly clear that regardless of which party had the burden of proof, and regardless of which party prevailed before the jury, the verdict loser had the right to assert on appeal that the jury's verdict was *either* not supported by the evidence *or* was against the great weight and preponderance of the evidence, as appropriate."

*Cropper v. Caterpillar Tractor Co.,* supra, at 650.

In the instant cause, a conviction for burglary of a building, appellant claimed on direct appeal that the evidence is "factually insufficient" to show he knowingly or intentionally entered the building. *Clewis v. State,* 876 S.W.2d 428 (Tex.App.—Dallas 1994).

The Dallas Court of Appeals held that both constitutional and statutory provisions granted and authorized it to exercise "*appellate* jurisdiction to *review* fact questions." *Id.,* at 430 (emphasis in original).

Believing, however, that when the burden of proof is "beyond a reasonable doubt" such a factual sufficiency review is "*necessarily included*" within a general sufficiency review performed under the *Jackson v. Virginia* standard of review adopted in this state," *id.,* at 439, and applying that standard, the Dallas Court of Appeals concluded the evidence is sufficient for "a rational trier of fact to have found *beyond a reasonable doubt* that

appellant knowingly or intentionally entered the building." *Id.,* at 440.

In a separate opinion the Chief Justice characterized that treatment of the problem "a flawed analysis," and he is correct. Indeed, the standard of review devised by the court of appeals smacks strongly of the one concocted in *Van Guilder v. State,* supra. Of course, that formulation was rejected in *Meraz,* supra.

A proper "factual sufficiency review" cannot logically and practically be "necessarily included" within the *Jackson v. Virginia* standard of review because the latter is intended and designed solely to determine sufficiency of the evidence to *support* a finding of guilt beyond a reasonable doubt, from the viewpoint of the State. The critical inquiry under *Jackson* is not whether the reviewing court itself believes the evidence establishes guilt; rather, it is whether, after viewing all the evidence "*in the light most favorable to the prosecution,* any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S., at 319, 99 S.Ct., at 2789, 61 L.Ed.2d, at 573 (last emphasis in original). Thus "the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Ibid* (emphasis in original). Where the record supports conflicting inferences, the reviewing court must, therefore, "presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.,* at 326, S.Ct., at 2793, L.Ed.2d, at 578.

Conversely, the inquiry for "factual sufficiency" is conducted pursuant to the test the Dallas Court eschewed—the same one used by it and other courts in civil cases, as well as previously used by the Supreme Court, the former court of appeals and this Court in criminal cases, any differences in phrasing

as demonstrated *ante,* ever since then the Court confirmed and exercised the very power and authority to determine "factual sufficiency" issues all those years until September 1, 1981. *Ergo,* in this respect the *White* opinion is wrong, as is the related part of *Meraz.* Indeed, just

recently the Court so determined relative to the defense of insanity in a capital murder case with sentence to death, and overruled *White,* adding that any reliance on *White* by *Meraz* was "misplaced." *Bigby v. State,* 892 S.W.2d 864, at 875 (Tex.Cr.App.1994).

being "merely semantical." *Clewis v. State*, supra, at 432, and n. 10. Essentially, that inquiry is whether the verdict is "so against the great weight and preponderance of the evidence as to be manifestly unjust." *Ibid.*

"A reversal based on the weight of the evidence ... can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict." *Tibbs v. Florida*, 457 U.S. 31, at 42–43, 102 S.Ct. 2211, at 2218, 72 L.Ed.2d 652, at 662 (1982). When examining the record for "factual sufficiency," therefore, the reviewing court determined or may assume the evidence is legally "sufficient," otherwise there would have been an acquittal, leaving no cause to test the evidence for "factual sufficiency." Having thus been met and satisfied, the *Jackson* test for "legal sufficiency" has no role in the subsequent inquiry for "factual sufficiency." The reviewing court no longer "views the evidence in the light most favorable to the prosecution;" rather it must consider and weigh the evidence to determine whether the jury's resolution of conflicting testimony was manifestly unjust. *Tibbs v. Florida, Id.*, at 42, 102 S.Ct., at 2218, 72 L.Ed.2d, at 661; *Cropper v. Caterpillar Tractor Co.*, supra, at 648–649; *Walker v. State*, supra, at 628–630; *Rochetszky v. State*, supra, at 233.

### B

Thus, the Dallas Court of Appeals was right about its jurisdiction, power and authority to review the evidence for "factual sufficiency" in a criminal case, but wrong about the requisite and proper standard of review an appellate court must conduct and apply to the facts.[18]

Accordingly, joining the opinion of the Court, I agree we should vacate the judgment of the court of appeals and remand the cause for further proceedings.

18. The Presiding Judge ventures "reservations" about confirming today the right, power and authority of appellate courts to reverse a judgment of conviction for "factual insufficiency," in that to do so may violate "the constitutional right to trial by jury" in Texas. Dissenting opinion at 157–158. That naturally prompts the question:

MEYERS, Judge, concurring.

Our lead opinion characterizes the issue in this case as whether the Court of Appeals properly refused to conduct a "factual sufficiency" review of the jury's verdict. Specifically, appellant's complaint is that the Court of Appeals refused to weigh exculpatory evidence in the balance when evaluating the rationality of the jury's verdict. Although this kind of complaint has been generically classified, together with other factual complaints on appeal, as a "factual sufficiency point," the classification is a little misleading in my view and encourages some of the mental difficulties associated with resolution of the problem presented here. *See generally* Calvert, *'No Evidence' and 'Insufficient Evidence' Points of Error*, 38 Tex.L.Rev. 361 (1960).

Clearly, appellant's complaint is about the jury's factfinding, and therefore presents a factual, not a legal, argument. Appellant is not contending, for example, that there was no evidence to support the verdict (legal insufficiency) or that he was conclusively shown to be not guilty (innocence as a matter of law), either of which argument would present a legal, not a factual, question. But, although he is plainly demanding a factual review of the jury's verdict, he is not specifically contending that the evidence supporting conviction was insufficient in itself to prove his guilt. He is only claiming that the contrary evidence was so great that it overwhelmed the evidence of guilt. Under such circumstances, he argues, a guilty verdict is clearly wrong, manifestly unjust, or irrational.

This distinction between the contention that evidence is insufficient to prove a fact and the somewhat different contention that other evidence overwhelmingly disproves that fact is important in the present context because the kind of evidentiary review performed by appellate courts under the rubric established by the United States Supreme

Whose constitutional right? The obvious answer: In a criminal case only the accused has such a constitutional right. Article I, § 10. Once convicted, a defendant is entitled to an opportunity to seek acquittal through a new trial. *Tibbs v. Florida*, supra, at 45, 102 S.Ct., at 2220, 72 L.Ed.2d, at 663.

Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), plainly does not contemplate that a reviewing court consider the probative weight of exculpatory evidence when evaluating the sufficiency of inculpatory evidence to sustain a criminal conviction. It is thus perfectly clear that the methodology prescribed by *Jackson v. Virginia* to satisfy constitutional requirements of due process is not what appellant wants. He wants a comparative weight of the evidence review. Accordingly, even if one believes, as I do, that the *Jackson* rule actually requires an assessment of "factual sufficiency," the way we have long understood that phrase in Texas, it is not an adequate substitute for the kind of review demanded by appellant. See *King v. State*, 895 S.W.2d 701 (Tex.Crim. App.1995) (Meyers, J., dissenting).

Of course, appellant does not get the kind of review he wants just because he demands it. As a threshold matter, an appellate court must have the power to review evidence in the manner appellant suggests and to grant the kind of relief he wants. Whether it is a good idea for appellate courts to engage in this kind of factual review is a serious question, and one which has sparked intense debate from time to time in the Texas Supreme Court. *E.g., Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646 (Tex.1988). That debate invariably focuses on the question whether such review effectively denies one or more of the litigants his constitutional right to a jury trial. But, it has been well-established in our civil jurisprudence for many years that the Texas courts of appeals do have the constitutional authority to perform such a review and to reverse judgments upon the facts either because the evidence was factually insufficient to support an affirmative factfinding or because the evidence militating against such factfinding was overwhelmingly greater. *Id.* It is generally thought that such reversals do not violate the right to a jury trial so long as the appellate court does not render judgment

for one of the parties, but rather the cause for another jury determination of the question. Thus, in such circumstances, the appellate court is said not to find facts, as a jury does, but merely to unfind them. Calvert, 38 Tex.L.Rev. at 368.

Our own recent precedents clearly establish that Texas appellate courts have the same constitutional authority to resolve questions about the rationality of a jury's verdict in criminal cases by weighing the probative force of evidence favoring a particular factfinding against the probative force of evidence disfavoring it. *Bigby v. State*, 892 S.W.2d 864, 870–77 (Tex.Crim.App.1994); *Meraz v. State*, 785 S.W.2d 146 (Tex.Crim. App.1990). Because that is really the only question presented in this case, appellant necessarily wins the argument on discretionary review unless we are prepared to abandon those precedents.[1] But it does not mean that appellant's conviction will be reversed. On the contrary, we are remanding this cause to the Court of Appeals for a decision whether the jury's verdict of guilty was actually so against the weight of the evidence as to be manifestly unjust. We do not imply at all that the lower court should answer this question in the affirmative. Indeed, unless the Dallas Court of Appeals decides that the evidence greatly preponderates in favor of appellant's innocence, his conviction will be affirmed and the entire matter will be ended, since our constitutional authority does not include the power to review the lower court's decision in this regard. Tex. Const. art. I, § 6.

Nevertheless, our lead opinion is likely to be controversial. For that reason alone, many lawyers and laypeople will misunderstand its essential holding or find it alarming. I hope that anyone so inclined will take a second look. In the final analysis, our opinion today only validates a long-standing truth of Texas constitutional law, that the courts of

---

1. In this regard, I would note that Judge Mansfield feels that some kind of *Heitman* analysis would be required before we could embrace what he calls a "different" factual sufficiency review. *See Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). This is a misperception of the issue before us. We are not called upon to decide whether our constitutional due-course-of-law clause requires a more exacting examination of the evidence on appeal than does the due process clause of the United States Constitution. We are only asked to decide whether the Texas Constitution actually confers upon appellate courts the authority to conduct such an examination.

appeals in this state have authority to require a new trial whenever a verdict of guilty is so clearly against the evidence as to be manifestly unjust. The public can be assured that the reversal of criminal convictions on this basis will be most uncommon in practice and that, with few exceptions, there will be no good reason to resent the ones that do occur.

That is why the dissenters' position in this case is so disappointing. Their main complaint seems to be that well-founded convictions will routinely be set aside by appellate judges who are more interested in coddling criminals than in seeing justice done.[2] This attitude toward the courts of appeals is not only unjustified, but it is disrespectful as well. The appellate courts of Texas are generally careful, competent, and well-practiced in the business of evidentiary review. They understand perfectly that their job is not to serve as jurors themselves, but to uphold the verdicts of jurors unless so clearly against the weight of the evidence as to be manifestly unjust. Accordingly, the dissenters have no reason whatsoever to believe that our intermediate appellate courts will not perform evidentiary review in a cautious, responsible, and deferential way, just as the law requires.[3] Their suggestion to the contrary can only be expected to generate hysteria where none is really justified.

The instant cause itself may ultimately be the proof of this fact. My own cursory examination of the evidence, as described in the pleadings of the parties and the opinions of the lower court, convinces me that the evidence, if indeed there is any, which militates

affirmatively in favor of appellant's innocence is so extraordinarily weak that no reasonable appellate court could conceivably find it to be overwhelming. Just because we acknowledge the authority of appellate courts to review jury verdicts on their facts does not mean, therefore, that those courts will perform factual evaluations in an unreasonable, insensitive, or unjust manner. Those who are inclined to be alarmed by our lead opinion should withhold judgment at least until they see how it actually works in practice.

With these few additional comments, I join the opinion of the Court.

McCORMICK, Presiding Judge, dissenting.

What this case boils down to is whether in criminal cases the appellate courts can substitute their judgment for the jury's on questions of credibility and weight of the evidence. Because the majority does not leave these matters to be resolved at the local level by a jury, I dissent.

The legal issues are whether this Court and the courts of appeals have the power in *direct* appeal criminal cases to apply a "factual sufficiency" standard in reviewing whether the evidence is sufficient to support the elements of the offense.[1] I would hold this Court and the courts of appeals have no such power, and they should, as they have done for years, continue to apply a *single* standard—the one set out in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (a reviewing court should view the evidence in the light most favorable to the verdict to determine whether any rational

2. *See* op. at 157–158 (McCormick, J., dissenting).

3. *See* op. at 158–159 (White, J., dissenting).

1. The issues of this Court's and the courts of appeals' power to apply a "factual sufficiency" standard are so related that this opinion addresses both issues. I use the term "factual sufficiency" standard as it is understood on the civil side, since the majority apparently adopts a modification of that standard today; i.e., the reviewing court, viewing the evidence without the prism of "in the light most favorable to the verdict," should set aside the verdict if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." Cf. *Cropper v. Cater-*

*pillar Tractor Co.,* 754 S.W.2d 646 (Tex.1988) (the civil side sets aside a verdict that is against the great weight and *preponderance* of the evidence as to be clearly wrong and unjust). I say *modification* of the civil "factual sufficiency" standard because the majority apparently adapts the civil "factual sufficiency" standard to the State's "beyond a reasonable doubt" burden of proof in criminal cases. See *Clewis v. State,* 876 S.W.2d 428, 433 (Tex.App.—Dallas 1994); *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). Of course, the majority opinion can only be intended to benefit criminal defendants since the State has no right to appeal an adverse jury verdict in a criminal case.

trier of fact could have found beyond a reasonable doubt the substantive elements of the offense as defined by state law). Another question lurking here that the majority wholly fails to address is, assuming this Court and the courts of appeals have this power to apply a "factual sufficiency" standard, whether, as a policy matter, we should exercise it. I also would hold judicial restraint is called for here.

### POWER TO APPLY "FACTUAL SUFFICIENCY" STANDARD IN CRIMINAL CASES

Article V, Section 5, of the Texas Constitution, sets out this Court's jurisdiction. In relevant part, it provides:

> "*The Court of Criminal Appeals shall have final appellate jurisdiction* coextensive with the limits of the state, and its determinations shall be final, in all criminal cases of whatsoever grade, *with such exceptions and under such regulations* as may be provided in this Constitution or *as prescribed by law.*" (Emphasis Supplied).

Article V, Section 6, of the Texas Constitution, sets out the courts of appeals' jurisdiction. In relevant part, it provides:

> "... *Said Court of Appeals shall have appellate jurisdiction* co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, *under such regulations as may be prescribed by law. Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error.*" (Emphasis Supplied).

As I understand the majority opinion, the general grant of appellate jurisdiction in these constitutional provisions grants this Court and the courts of appeals the same power to review "fact" questions in *direct*

appeal criminal cases.[2] See *Bigby v. State,* 892 S.W.2d 864, 870–75 (Tex.Cr.App.1994) (plurality op.). And, I agree. Our prior cases [3] misconstrued the "factual conclusivity" clause in Article V, Section 6, by identifying it as the *source* of the courts of appeals' "fact" jurisdiction. See *Bigby,* 892 S.W.2d at 871. Our prior cases arguably meant only the courts of appeals had the power to review "fact" questions in direct appeal cases while this Court had no such power in direct appeal cases. See, e.g., *White,* 591 S.W.2d at 854–56. The majority presents compelling reasons to disavow our prior cases to the extent they suggest the "factual conclusivity" clause is the source of the courts of appeals' "fact" jurisdiction.

A civil "factual sufficiency" standard, which I assume the majority intends to adapt to the criminal side, requires the reviewing court to consider and *weigh* all the evidence; i.e., the reviewing court considers the evidence without the prism of "in the light most favorable to the verdict." See *Cropper,* 754 S.W.2d at 648–652; *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634–35 (Tex.1986) (rejecting the position the reviewing court in civil cases is not free to "reweigh the evidence and set aside a jury verdict merely because the judges feel a different result is more reasonable"); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361 (1960). The main difference between the *Jackson v. Virginia* standard and a "factual sufficiency" standard is the *Jackson v. Virginia* standard requires the reviewing court to defer to the jury on questions of credibility and weight of the evidence while the "factual sufficiency" standard allows the reviewing court to second-guess the jury on these questions. See *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982) (when a reviewing court

---

**2.** I do not use the term "fact" jurisdiction as automatically requiring a "factual sufficiency" standard of review, as the majority appears to do. The two terms do not necessarily go hand-in-hand. See *Clewis,* 876 S.W.2d at 431 (appellate "fact" jurisdiction should not be confused with the appellate standard of review to exercise that jurisdiction).

**3.** See *Meraz v. State,* 785 S.W.2d 146 (Tex.Cr.App.1990); *Schuessler v. State,* 719 S.W.2d 320 (Tex.Cr.App.1986); *Van Guilder v. State,* 709 S.W.2d 178 (Tex.Cr.App.1985), cert. denied, 476 U.S. 1169, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986); *Combs v. State,* 643 S.W.2d 709 (Tex.Cr.App.1982); *White v. State,* 591 S.W.2d 851 (Tex.Cr.App.1979).

reverses the verdict based on the weight of the evidence, the reviewing court sits as a "thirteenth juror" and disagrees with the jury's resolution of conflicting testimony); *Clewis,* 876 S.W.2d at 437–38 (the *Jackson* "prism" serves as the appellate mechanism for deferring to the factfinder's credibility and weight decisions).

Therefore, for purposes of the rest of this discussion, I assume the majority intends to adopt a "factual sufficiency" standard that requires the reviewing court to weigh the evidence. See *Clewis v. State,* 922 S.W.2d 126, 149 (Tex.Cr.App.1995) (Clinton, J., concurring) (the reviewing court must consider and *weigh* the evidence to determine whether the jury's resolution of conflicting testimony was manifestly unjust).

With this understanding, I disagree with the majority's conclusion the courts of appeals have the power to apply a "factual sufficiency" standard in criminal cases. The issue here largely involves a question of statutory construction since the grant of appellate jurisdiction is subject to such exceptions and regulations as may be *"prescribed by law."* See Article V, Sections 5 & 6 (Emphasis Supplied). The statutory scheme of things on the criminal side shows the Legislature undertook to insure a "factual sufficiency" standard would not be applicable in criminal cases.

The majority relies on Article 44.25, V.A.C.C.P., to support its conclusion the courts of appeals have the power to apply a "factual sufficiency" standard. However, the Legislature made significant changes to Article 44.25 in 1981 when the courts of appeals received criminal jurisdiction in noncapital direct appeal cases. See *Bigby,* 892 S.W.2d at 874–75 fn 5. The 1981 amendments modified Article 44.25 to its current form:

"The courts of appeals or the Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts." *Bigby,* 892 S.W.2d at 874–75 fn 5.

Prior to this, Article 44.25 and its statutory predecessors provided:

"The Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts. *A*

*cause reversed because the verdict is contrary to the evidence shall be remanded for a new trial."* *Bigby,* 892 S.W.2d at 874–75 fn 5. (Emphasis Supplied).

Before this, the statutory predecessor to Article 44.25 provided:

"The court of appeals [the predecessor to this Court] may reverse the judgment in a criminal action, as well upon the law as upon the facts; *but, when a cause is reversed for the reason that the verdict is contrary to the weight of the evidence, the same shall, in all cases, be remanded for a new trial."* *Bigby,* 892 S.W.2d at 874–75 fn 5. (Emphasis Supplied).

Therefore, any questions about this Court's and the courts of appeals' power to apply a "factual sufficiency" standard were resolved in 1981 when the Legislature deleted the emphasized portions of Article 44.25 which allowed the remedy of a new trial when the verdict was contrary to the weight of the evidence. The legislative changes to Article 44.25 indicate a legislative intent to limit the power of this Court and the courts of appeals to reverse the judgment and remand the case for a new trial when they subjectively believe the verdict is contrary to the weight of the evidence. Any other construction would render the legislative changes to Article 44.25 meaningless. See *Ex parte Trahan,* 591 S.W.2d 837, 842 (Tex. Cr.App.1980) (Legislature is presumed to change the law when it amends a statute, and a construction should be adopted that gives effect to the intended change rather than one which renders the amendment useless). Of course, it is well-settled on the civil side that when a "factual sufficiency" challenge is sustained, the remedy is to reverse the judgment and remand the case for a new trial. However, the Legislature has insured that this Court and the courts of appeals do not have the power to do that. The legislative history of Article 44.25 does not support the majority's conclusion the courts of appeals have the power to apply a "factual sufficiency" standard in criminal cases.

The majority relies on various cases decided in the late 1800s and early 1900s to support its position Article 44.25 does not oper-

ate as a limitation on the power to apply a "factual sufficiency" standard in criminal cases. See *Clewis,* 922 S.W.2d at 139–143 (Clinton, J., concurring). However, these cases were decided under the earlier versions of Article 44.25. The 1981 statutory changes to Article 44.25 render these cases irrelevant to the extent they can be read as supporting the application of the "factual sufficiency" standard the majority adopts.

The majority apparently concludes the 1981 legislative changes to Article 44.25 were "useless" because "presumably" these changes were in response to this Court's opinion in *Johnson v. State,* 571 S.W.2d 4, 6 fn. 2 (Tex.Cr.App.1978), which declared Article 44.25 unconstitutional to the extent it conflicted with *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). See *Clewis,* 922 S.W.2d at 145–147 (Clinton, J., concurring). As I understand the majority's position, *Johnson* is of no consequence since it is now understood that reversing and remanding for a new trial based on the weight of the evidence does not violate *Burks–Greene.* See *Tibbs,* 457 U.S. at 41–42, 102 S.Ct. at 2218.

However, *Johnson* was not concerned with what at the time was the well-settled standard of review which deferred to the jury on questions of credibility and weight of the evidence. *Johnson* was concerned with whether reversing and remanding for a new trial under that standard violated *Burks–Greene.* *Johnson* clearly intended for an acquittal to be the only remedy for a reversal "upon the law as upon the facts." See *Bigley v. State,* 865 S.W.2d 26, 32–33 (Tex.Cr.App. 1993) (Clinton, J., dissenting) (one compelling effect of *Burks–Greene* was to render the second sentence of Article 44.25 unconstitutional). And, although we, and "presumably" the Legislature, now understand that reversing and remanding for a new trial based on

the weight of the evidence does not violate *Burks–Greene,* the Legislature has not undertaken to give back what the majority fears it may have taken away in 1981 when it amended Article 44.25. Under these circumstances, I would find it appropriate to decide this Court did not do a "useless" act in *Johnson* and neither did the Legislature when it amended Article 44.25 in 1981.[4] See *Ex parte Trahan,* 591 S.W.2d at 842.

More importantly, Article 38.04, V.A.C.C.P., also shows a legislative intent that a "factual sufficiency" standard is not applicable in criminal cases. Article 38.04, in relevant part, says the jury in all criminal cases "is the exclusive judge of the facts proved and of the weight to be given to the testimony." The bottom line here is the majority adopts a standard that requires the reviewing court to *weigh* the evidence. However, the "plain language" of Article 38.04 makes the jury the exclusive judge of the weight of the evidence.

The majority decides Article 38.04 does not apply to appellate review of sufficiency issues because Article 38.04 is meant "to distinguish the role of the jury from the role of the judge at trial." The majority's interpretation of Article 38.04 is contrary to its "plain language" and exceeds the scope of this Court's power by legislating an "exception" to Article 38.04. See, e.g., *Garcia v. State,* 829 S.W.2d 796, 800–01 (Tex.Cr.App.1992) (Clinton, J., concurring). Also, it makes no sense to hold the trial judge, who has observed the witnesses testify and their demeanor, has no power to weigh the evidence, while the reviewing court has the power to weigh the evidence on a cold record.

The majority's interpretation of Article 38.04 also is contrary to this Court's precedents which for about the last seventy-five years have consistently construed Article 38.04 and its statutory predecessors to re-

---

4. In *Bigley,* Judge Clinton took the position the "mandate" in Article 44.25 requires the remedy of an acquittal when the evidence is insufficient to support the conviction. *Bigley,* 865 S.W.2d at 32–33 (Clinton, J., dissenting). It should be noted *Bigley* was decided eleven years after the Supreme Court decided *Tibbs* which held a reversal and remand for a new trial based on the weight of the evidence does not violate double

jeopardy principles. Judge Clinton did not claim in *Bigley,* as he appears to do here, that *Johnson* was of no consequence in light of *Tibbs.* Just two years after *Bigley,* Judge Clinton now takes the position the "mandate" in Article 44.25 no longer prohibits the reviewing court from reversing and remanding for a new trial. Judge Clinton's position in this case is inconsistent with the position he took just two years ago in *Bigley.*

quire the reviewing court to defer to the jury on questions of credibility and weight of the evidence. See, e.g., *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Cr.App.1982); *Franklin v. State*, 147 Tex.Cr.R. 636, 183 S.W.2d 573, 574 (App.1944); *Mason v. State*, 108 Tex.Cr.R. 452, 1 S.W.2d 283, 284 (App.1927) (op. on reh'g); see also *Jolly v. State*, 87 Tex.Cr.R. 288, 221 S.W. 279, 281 (App.1920) (the reviewing court sets aside the verdict when the evidence, *viewed in its strongest light from the State's standpoint*, fails to make guilt reasonably certain). These precedents are unaffected by this Court's disapproval of the cases set out in footnote three of this opinion.

The majority avoids the application of seventy-five years of well-settled precedent by its reliance on an 1883 "seminal opinion for a unanimous court" in *Walker v. State*, 14 Tex. App. 609 (1883).[5] See *Clewis*, 922 S.W.2d at 138 (Clinton, J., concurring). According to the majority, the last seventy-five years of this Court's precedents construing Article 38.04 are "wrong," because *Walker* decided the statutory predecessors to Article 38.04 did not prohibit the reviewing court from weighing the evidence. Assuming this is a good reason to ignore principles of *stare decisis*,[6] cases like *Walker* cannot be reconciled with the clear and unambiguous legislative command in Article 38.04 that the jury is the exclusive judge of the weight of the evidence. With all due respect, *Walker* was "wrong." The majority shows no respect for principles of *stare decisis* or the "plain language" of our legislative enactments.

In addition, I have found no legislative provision similar to Article 38.04 on the civil side which apparently is one reason why the civil side can apply a "factual sufficiency" standard. For example, in *Cropper*, the Tex-

as Supreme Court reaffirmed for the civil side that the "factual sufficiency" standard does not deny the right to trial by jury guaranteed by Article I, Section 15, of the Texas Constitution. See *Cropper*, 754 S.W.2d at 648–53. The Supreme Court said the "factual sufficiency" standard does not violate this right to trial by jury because it only allows the reviewing court to "unfind" facts and remand the cause for a new trial before a different jury. See *id.* That the reviewing court could weigh the evidence and disagree with the jury's resolution of conflicting testimony was irrelevant. See *id.* As long as the reviewing court does not render judgment for the appealing party, the civil side does not find a violation of the right to trial by jury. See *id.*

*Cropper* could support the proposition that adopting a "factual sufficiency" standard in criminal cases does not violate the Texas constitutional right to trial by jury. But see *Cropper*, 754 S.W.2d at 653–56 (Robertson, J., dissenting). However, *Cropper* has nothing to do with whether adopting a "factual sufficiency" standard in criminal cases violates Article 38.04, which it does. Therefore, *Cropper* offers no support for adopting a "factual sufficiency" standard in criminal cases, and the majority errs to harmonize "the criminal and civil jurisprudence of this State with regard to appellate review of questions of factual sufficiency."

The majority also implicitly explains its holding is necessary to prevent an "unjust" conviction. However, the majority does not explain how this question is relevant to the issue before the Court or how a verdict that meets the *Jackson v. Virginia* standard can

---

5. The majority apparently reads *Walker* to support the application of *four* standards of review in criminal cases! See *Clewis*, 922 S.W.2d at 139 (Clinton, J., concurring) ("First," "Second," Third," and "Fourth" rules).

6. Apparently, as evidenced by the majority's reliance on cases like *Walker*, the crux of the majority's opinion is the pre–1920 cases are now "right" and the post–1920 cases are now "wrong." See *Clewis*, 922 S.W.2d at 143 (Clinton, J., concurring) (e.g., dismissing *Franklin* because the authoring judge was "less than thor-

ough in his research"). However, the point is that for at least seventy-five years this Court in reviewing sufficiency issues has applied a *single* standard that defers to the jury on questions of credibility and weight of the evidence. And, the majority presents insufficient reasons to depart from these precedents. See *Hubbard v. U.S.*, —— U.S. ——, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995) (Scalia, J., concurring) (departure from doctrine of *stare decisis* requires reasons that go beyond a mere demonstration that the overruled opinion was wrong).

be considered "unjust."[7] Properly applied, the *Jackson v. Virginia* standard is about as exacting a standard as a "factual sufficiency" standard because both standards require the reviewing court to consider *all* the evidence.[8] After a reviewing court determines the evidence is sufficient to support the verdict under the *Jackson v. Virginia* standard, it is practically impossible to say, under a proper application of a "factual sufficiency" standard, the verdict is so contrary to the overwhelming weight of the evidence as to be manifestly unjust. Or, "once the *Jackson* sufficiency standard is met, the evidence could never be" insufficient under a proper application of a "factual sufficiency" standard. See *Clewis,* 876 S.W.2d at 438. This is so because:

> "Within the constraints of our jury system, the *Jackson* standard ensures a just and fair result. The purpose of the *Jackson* standard is to ensure only the rationality of the factfinder. *Id.* Clearly, any irrational verdict would be manifestly unjust and clearly wrong under our jury system. Conversely, however, we cannot perceive of any sufficient, i.e., rational, verdict of guilt beyond a reasonable doubt that would be 'manifestly unjust and clearly wrong.' Furthermore, even if such a verdict is theoretically possible, we agree with the Tennessee Supreme Court, which under similar circumstances stated, 'We find the weight of the evidence standard to be difficult, if not impossible, to apply rationally and uniformly in criminal cases.' (Cite and footnote omitted)." *Id.*

A proper application of the *Jackson v. Virginia* standard does not result in an "unjust" conviction.

Finally, and also contrary to the civil side, I have some reservations about whether applying a "factual sufficiency" standard in criminal cases violates the constitutional right to trial by jury. See *Cropper,* 754 S.W.2d at 653–56 (Robertson, J., dissenting). It seems irrelevant the reviewing court can only "unfind" facts. The reviewing court is still reversing the judgment and remanding the case for a new trial before a different jury merely because the reviewing court subjectively believes a different result is more reasonable. See *Tibbs,* 457 U.S. at 41–42, 102 S.Ct. at 2218. Applying a standard that removes the "prism" of "in the light most favorable to the verdict" may violate the right to trial by jury in Texas.

However, in this case, I would not find it necessary to address the constitutional issue. I would only hold the 1981 legislative changes to Article 44.25 combined with Article 38.04 clearly "prescribe" this Court and the courts of appeals from applying a "factual sufficiency" standard in criminal cases.

Having concluded that neither this Court nor the courts of appeals have the power to apply a "factual sufficiency" standard in criminal cases, the next issue to discuss is the standard to apply in exercising the reviewing court's "fact" jurisdiction. See *Bigby,* 892 S.W.2d at 870–75; Article 44.25. The Dallas Court of Appeals aptly presented the question as follows:

> "Appellate fact jurisdiction, as authorized by article V, section 6, should not be confused with the appellate standard of review required to exercise that fact jurisdiction. The state constitution, at most, says that

---

7. The majority presents a hypothetical in footnote twelve of its opinion to illustrate an "unjust" conviction under the *Jackson v. Virginia* standard; i.e., the 40 nuns hypothetical. This hypothetical makes two assumptions neither of which are very practical. It assumes a prosecutor would choose to prosecute under that fact situation and a jury would actually convict under that fact situation. However, if such a conviction was ever had, the reviewing court in applying *Jackson v. Virginia* should not have too much trouble concluding that no rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense. Therefore, the 40 nuns hypothetical would not result in an "unjust" conviction under *Jackson v. Virginia.*

8. The majority mischaracterizes how we apply the *Jackson v. Virginia* standard when it says, "we have applied *Jackson* in such a way that the only evidence a reviewing court considers is the evidence that supports the verdict." This Court rejected this application of the *Jackson v. Virginia* standard in *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Cr.App.1989), overruled on other grounds, *Geesa v. State,* 820 S.W.2d 154, 161 (Tex.Cr.App.1991). *Butler* iterated the reviewing court must consider the "entire body of evidence." See *Butler,* 769 S.W.2d at 239; *Clewis,* 876 S.W.2d at 437.

an intermediate appellate court has conclusive fact *jurisdiction* in both civil and criminal cases. It does not purport to set out the *standard of review* required to exercise that fact jurisdiction. The question before us in this case, therefore, is what *standard of review* we are required to apply in reviewing the appellant's factual sufficiency challenge to the evidence supporting an element of the charged burglary offense." *Clewis*, 876 S.W.2d at 431 (Emphasis in Original).

The *Jackson v. Virginia* standard is consistent with the constitutional grant of appellate jurisdiction, the constitutional right to trial by jury, Articles 38.04 and 44.25, and our prior practice in reviewing sufficiency issues. When this Court reverses a conviction under the *Jackson v. Virginia* standard, it is reversing the judgment "upon the law as upon the facts." See Article 44.25.; *Clewis*, 876 S.W.2d at 437 (*Jackson* specifically requires the reviewing court to look at all the evidence, i.e., the facts).

In addition, the 1981 amendments to Article V, Section 6, were intended to grant the courts of appeals *only* the same power in noncapital direct appeal cases that this Court had exercised prior to the 1981 amendments. Cf. *Cropper*, 754 S.W.2d at 649. For about seventy-five years, this Court has applied a *single* standard in reviewing sufficiency issues—the *Jackson v. Virginia* standard or something similar to it. See *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Jolly*, 221 S.W. at 281. How this Court traditionally has exercised its power to review sufficiency issues should inform its decision on how to exercise that power now.

And, in light of how this Court traditionally has reviewed sufficiency issues and the intent of the 1981 amendments to Article V, Section 6, I also would hold the *Jackson v. Virginia* standard is the standard this Court and the courts of appeals should apply to the elements of the offense.

### ASSUMING THE POWER TO APPLY A "FACTUAL SUFFICIENCY" STANDARD, SHOULD THE REVIEWING COURT EXERCISE THIS POWER

The only check on this Court's exercise of its constitutional power, short of constitution-

al amendment and usually statutory enactment, is this Court's own sense of self-restraint. There is nothing in the Constitution or the statutes commanding this Court or the courts of appeals to apply a "factual sufficiency" standard in criminal cases. Assuming this power exists, I would hold this is an appropriate case for the Court to exercise restraint and not adopt the "factual sufficiency" standard for essentially the same reasons Florida abandoned the application of a similar standard in *Tibbs v. Florida*, 397 So.2d 1120, 1125–26 (Fla.1981) (considerations of policy support, if not dictate, this result). Twelve citizens sitting as jurors are better able to determine the credibility of the witnesses and the weight of the testimony than are professional appellate judges. See *Cropper*, 754 S.W.2d at 653 (Robertson, J., dissenting).

Considerations of judicial economy also call for the exercise of judicial restraint. And, it does not make much sense to require the State to assume the burden of proving its case beyond a reasonable doubt in the trial court, then tell the State on appeal its evidence meets the *Jackson v. Virginia* standard, but then tell the State the reviewing court is reversing the conviction because the evidence is "factually insufficient." The majority opinion continues us down the road of erecting such massive barriers to the effective and fair administration of the criminal law that the system will be unable to carry out its elementary function of protecting law-abiding citizens from dangerous criminals.

Law-abiding citizens, who are unconcerned with the legal niceties discussed in these pages, should understand the majority opinion increases the likelihood they will become a victim of violent crime because, according to the majority, this is the only protection a criminal defendant has from an "unjust" conviction. The majority opinion does not cite one instance of an "unjust conviction" under *Jackson*, and, in light of the foregoing discussion, a guilty verdict that meets the *Jackson v. Virginia* standard can never be considered an "unjust" conviction. The *Jackson v. Virginia* standard strikes a proper balance between granting defendants a fair evidentiary

review of their convictions and protecting society from dangerous criminals. However, the majority opts to interpret the law to protect the criminal defendant at the expense of the law-abiding citizen. The benefit society receives is protection from the nonexistent chance of an "unjust" conviction.

The majority opinion unnecessarily expands the power of the judiciary to release dangerous criminals back into society. The majority accomplishes this by ignoring clear legislative intent and well-settled precedent in the tradition of "judicial activism." Respectfully, I dissent.

KELLER, J., joins this dissent.

WHITE, Judge, dissenting.

Law-abiding Texans, hold on to your hats. We have another "run-away train" and it is again driven by a reckless, careless, and mischievous driver, Judge Maloney.[1]

After reviewing the decision of the Dallas Court of Appeals in the instant case, I find myself in agreement with the reasoning and analysis of Justice Lagarde. See *Clewis v. State,* 876 S.W.2d 428 (Tex.Cr.App.1994). The majority has not provided this Court with a sufficient reason to abandon *Jackson v. Virginia*'s standard for reviewing evidentiary sufficiency as the sole standard for reviewing sufficiency of the evidence and, instead, add the civil standard for reviewing factual sufficiency of the evidence to the review of the appeals in criminal cases.

In its opinion, the majority alters the landscape upon which this State's appellate courts will review sufficiency of the evidence in criminal cases. From this day forward, the evidence supporting a criminal conviction will be reviewed twice for sufficiency on appeal: once, to determine if that evidence is legally sufficient, pursuant to the standard set out in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Whether the evidence, when viewed in a light most favorable to the verdict, would lead any rational trier of fact to conclude beyond a reasonable doubt that the substantive elements of a criminal offense are true.); and second, to determine if that same evidence is factually sufficient, pursuant to the standard set out by the majority today (Whether the evidence, while not being viewed through the prism of the light most favorable to the verdict, is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust). Under this decision, a reviewing court not only has the responsibility to decide if the evidence at trial was legally sufficient to support the decision of the trier of fact, a task which carries the inherent burden of respecting the province of the finder of fact to assess the credibility of the evidence and determine the weight to be assigned to that evidence, but the reviewing court now also possesses the duty to review the weight and credibility of that same evidence for itself, far removed from the courtroom where the evidence was presented and the demeanor of the witnesses observed by the trier of fact[2], in order to determine if it, the reviewing court, would have reached the same conclusion. I respectfully dissent to this decision.

This holding by the majority represents more than a decision to usurp the role of the jury in our criminal courts;[3] it is no less

---

**1.** Also see discussion of *Grunsfeld v. State,* 843 S.W.2d 521 (Tex.Cr.App.1992), infra.

**2.** What can an appeals court do to accurately review the testimony of a witness for the defense who had his fingers crossed, rolled his eyes, sweated nervously or gave other non-verbal indicators to the trier of fact that indicated the witness was not relating the facts all that correctly? The answer is that the appeals court cannot accurately assess that testimony.

**3.** Judge Meyers is disappointed in my dissent (see page 151 of his concurring opinion) because he says it is disrespectful to the Courts of Appeals. Does this guy blow smoke or what? Contrary to Judge Meyers' way of thinking, we

should affirm a well-reasoned decision of the Dallas Court of Appeals which Judge Meyers and the aggressive and assertive majority have gone to great lengths to reverse. Who is disrespectful? In this case the opinion of the Court of Appeals was written by Justice Sue Lagarde, a well respected, very competent, outstanding jurist in this State. Who's knocking the Court of Appeals? See footnote 4 of my dissent. I for one am not taking the Courts of Appeals to task. I fully agree with the decision of the Dallas Court of Appeals. It is Judge Meyers who castigates the Dallas Court and casts the deciding vote to reverse it.

In his concurring opinion, Judge Meyers goes to great lengths to cover his fanny in this case,

than a breach of faith by a majority of this Court by which it has abrogated its traditional duty of respecting the abilities of the juries and trial courts of this State to fulfill their responsibility to evaluate and assess the weight and credibility of the evidence presented to them. The citizens of this State are entitled to juries who enjoy this responsibility exclusively.

However, from this day forward, the decision by the majority will permit on some occasions as few as three judges of a mid-level appellate court to substitute their own personal judgment of the evidence for the decision of the twelve citizens of a jury who observed the witnesses and determined their credibility and truthfulness, personally listened to the presentation of testimony and physical exhibits, assessed the weight and credibility of all the evidence, and rendered a verdict beyond a reasonable doubt based upon all of this under the direction of the instructions of an experienced trial court.[4] This decision is no less than an usurpation of the jury's role as the finder of fact in criminal cases.

In *Abdnor v. State*, 871 S.W.2d 726 (Tex. Cr.App.1994), this Court explained the role of the jury.

"Texas has followed the common law in assigning a fact-finding purpose to the jury. Tex. Const. art. I, § 15 interp. commentary (Vernon 1984). We have consistently held, and our Code of Criminal Procedure explicitly provides, that 'the juror's are the exclusive judges of the facts ... [and] of the issues of the facts.' "

*Abdnor v. State*, 871 S.W.2d, at 731; and cases cited therein. In its decision, the majority has granted to the appellate courts of this State the power to sit as thirteenth jurors in each criminal case that comes up for direct appellate review.

The majority attempts to subtly dispute this notion by asserting an appellate court, when conducting a factual sufficiency review, "cannot substitute its judgment for that of the factfinder." *Clewis v. State*, at 133. The majority cites to *Tibbs v. Florida*, 457 U.S. 31, at 42, 102 S.Ct. 2211, at 2218, 72 L.Ed.2d 652 (1982) in support of its notion. However, the majority's citation to *Tibbs* is no more than an effort to "hide the ball;" which in the instant case, the ball is no less than an attempt to subvert the jury's role as the ultimate finder of fact in criminal cases.

The Court in *Tibbs* discusses the appellate review of factual sufficiency in terms that indicate an appellate court performing that function is doing no less than substituting its judgment of the facts for that of the jurors, even though it is not substituting a new verdict for the one originally rendered by the trier of fact.

"A reversal on this ground [that a guilty verdict is against the weight of the evidence], unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, **the appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony.** This **difference of opinion** no more signifies acquittal than does a disagreement

---

but the Austin Tent and Awning Company does not have a large enough cover in stock. His concurring opinion should be carried in the funny paper section of every newspaper in this State. Judge Meyers suggests that my dissent will "generate hysteria." As I stated in my opening sentence, "Law-abiding Texans, hold on to your hats." The hysteria, if any, of course, will be with the victims of crime and the law-abiding Texans. After this opinion is handed down, the celebration by the dope dealers, robbers, rapists, murderers and Judge Meyers will overshadow that of the Dallas Cowboys' victory in Super Bowl XXX.

Judge Meyers closes his opinion with more smoke by stating that the defendant should probably lose when the case goes back to the Court of Appeals. He covers up the fact that his decision will have far reaching results in EVERY criminal case from this day forward. He certainly invites hysteria on a grand scale.

4. As Justice Lagarde pointed out in the majority opinion of the Dallas Court of Appeals:

"This conclusion [that the Courts of Appeals have been provided with appellate jurisdiction to review fact questions] does not mean that we have jurisdiction to act as a factfinder and assess the credibility of witnesses and re-weigh evidence. To the contrary, Texas law is clear that we do not."

*Clewis v. State*, 876 S.W.2d, at 430; and authorities cited therein.

among the jurors themselves." (emphasis added)

*Tibbs v. Florida,* 457 U.S., at 42, 102 S.Ct., at 2218. In its decision, the aggressive and assertive majority is judicially legislating the status of appellate courts as "thirteenth jurors."

By virtue of its decision to bestow upon appellate courts the responsibility of being the ultimate finder of fact, the majority has chosen to circumvent the will of the people of this State, as manifested in the statutes adopted by their elected representatives. See Tex.Code Crim.Proc.Ann. art. 36.13. This type of judicial activism by this Court is, unfortunately, not new to this Court. Neither is the reaction of our State's legislators and citizens to such judicial activism.

It is not unusual for the Legislature to adopt statutes designed to reverse decisions of this Court. This author offers three examples. First, this Court ran afoul of the will of the Legislature on the issue of the admission of unadjudicated extraneous offenses during the punishment phase of non-capital trials. In *Murphy v. State,* 777 S.W.2d 44 (Tex.Cr.App.1988), on rehearing, this Court concluded that Tex.Code Crim. Proc.Ann. art 37.07 § 3(a) "precludes evidence of specific acts of conduct" at the punishment stage to show the circumstances of the offender. *Murphy,* 777 S.W.2d, at 64; see also J. White dissenting, at 50–53, and 73. After *Murphy* was handed down, the Legislature amended Art. 37.07, § 3(a) to allow evidence to be introduced during sentencing on "any matter the Court deems relevant to sentencing." TEX.GEN. & SPEC.LAWS, 71st Leg., ch. 785, § 4.04 (1989). This amendment passed by a vote of 144 to 0 in the House and by a vote of 28 to 0 in the Senate. See TEX.GEN. & SPEC.LAWS, 71st Leg., ch. 785, § 4.04 (1989) (historical notes).

Three years later, this Court was asked to determine whether extraneous unadjudicated conduct was to be admitted into evidence during the punishment stage of a non-capital trial under the amendments to § 3(a). In *Grunsfeld v. State,* 843 S.W.2d 521, authored by Judge Maloney, a plurality of this Court concluded that the Legislature had not altered § 3(a) in a manner that would call for a reversal of *Murphy. Grunsfeld v. State,* at 524–525. Therefore, a plurality of this Court concluded under the amended statute, the trial courts erred "in admitting evidence of unadjudicated extraneous offenses under Art. 37.07 § 3(a)." *Grunsfeld v. State,* at 526. In a dissenting opinion, this author decried the efforts of the *Grunsfeld* plurality to judicially legislate changes to the 1988 amendment of § 3(a). See *Grunsfeld,* J. White, dissenting, at 564–565.

The legislature acted quickly to wipe off the books the *Grunsfeld* decision regarding the 1989 amendment to § 3(a). The Legislature appeared to specifically address the opinion in *Grunsfeld* when it again revised § 3(a). This 1993 amendment to § 3(a) authorized the admission of "any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant." See TEX.GEN. & SPEC.LAWS, 73rd Leg., ch. 900, § 5.05 (1993). This amendment passed by a *viva voce* vote in the Senate and by a non-record vote in the House. See TEX.GEN. & SPEC.LAWS, 73rd Leg., ch. 900, § 5.05 (1993) (historical notes). In this way, the Legislature acted quickly to strike down the efforts by a judicially activist plurality of this Court.[5]

Secondly, a similar chain of events occurred when this Court handed down its opinion in *Green v. State,* 706 S.W.2d 653 (Tex.Cr.App.1986).[6] In *Green,* this Court was called upon to decide whether TEX. CODE CRIM.PROC.ANN. art. 42.08(a) permitted trial courts to stack, or cumulate, probationary sentences onto prison sentences. This Court decided the only punish-

---

**5.** The infamous *Grunsfeld* decision was authored by Judge Maloney who now submits this even more bizarre opinion. In my dissent to *Grunsfeld,* I tried to point out the absurd interpretations put forth in that decision and what the aftermath of their publication would be. I was correct then. Time will tell if I will be correct again in the instant case.

**6.** I point out that I joined the majority in this case and it was a unanimous opinion (there was one concurrence).

ment that art. 42.08(a) permitted a trial court to cumulate upon a second or subsequent conviction when the preceding conviction ceases to operate is punishment by confinement in a prison or a jail. *Green*, at 657. This court's approach to interpreting Art. 42.08(a), which restricted the discretion of a trial court to assess punishment, provoked a response from the Legislature.

In the next legislative session the Legislature acted to correct the activist approach taken by the Court in its interpretation of Art. 42.08(a). The Legislature specifically provided for such sentence cumulation during the following year:

"When the same defendant has been convicted in two or more cases, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction. Except as provided in Sections (b) and (c) of this article, in the discretion of the court, the judgment in the second and subsequent convictions may either be that the sentence imposed or suspended shall begin when the judgment and sentence imposed or suspended in the preceding conviction has ceased to operate, or that the sentence imposed or suspended shall run concurrently with the other case or cases. . . ."

This amendment to art. 42.08 passed by a vote of 134 to 3 in the House and by a vote of 30 to 0 in the Senate. See TEX.GEN. & SPEC.LAWS, 70th Leg., ch. 513, § 1 (1987) (historical notes).

Lastly, this Court attempted to strike down the Legislature's decision to permit trial courts to instruct juries on the parole eligibility of defendants. In *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1987), this Court concluded that the statute, and the written parole law instruction which it mandated, violated the separation of powers provision of the state constitution. See TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(a), and TEX. CONST., article II, § 1; see, also, *Rose v. State*, at 535 (on original submission). This Court also concluded that art. 37.07, § 4(a) and the instruction it mandated violated the due course of law provisions of the state constitution. See TEX. CONST., Arti-

cle 1, §§ 13, 19; and *Rose v. State*, at 537 (on original submission).

The dissenting opinion in *Rose*, authored by Presiding Judge McCormick (who also has a dissent in this case), criticized the majority's effort to judicially legislate a change to a statute.

"There is so much wrong with the majority opinion that to dissent in full would require the writing of at least a two volume treatise entitled "Judicial Legislation: A Means To An End." Ignoring a constitutional amendment approved by the people of the State of Texas, the majority, without logic, rationale or conscience, strikes down a statute which passes judicial muster in every jurisdiction that has addressed comparable law."

*Rose v. State*, 752 S.W.2d, at 545, J. McCormick, dissenting (on original submission). After the decision in *Rose v. State* was handed down, the Legislature and the voters of the State quickly moved to recodify their intent to permit juries in this State to be instructed on the law of parole eligibility.

The Texas Legislature passed into effect a statutory parole law instruction as an addition to the Code of Criminal Procedure. See now, TEX.CODE CRIM.PROC.ANN. art. 37.07 § 4. The Senate passed this provision on a *viva voce* vote, while the House passed it by a non-record vote. See TEX.GEN. & SPEC.LAWS, 71st Leg., ch. 103, § 1 (1989) (historical notes). The Texas Legislature expressly conditioned the validity of the new art. 37.07 § 4, upon the passage of a simultaneously drafted constitutional amendment. The Legislature passed a joint resolution proposing the constitutional amendment to the people of Texas for ratification by a vote of 26 to 5 in the Senate and by a vote of 133 to 10 in the House. See Senate Joint Res. 4: Third reading, TEX.SENATE J., 71st Leg., v. I (1989); and Senate Joint Res. 4: Second Reading, TEX.HOUSE J., 71st Leg., v. II (1989). The Legislature also passed a provision, which made the revised version of art. 37.07, § 4 conditional on the passage of the Constitutional Amendment, by a *viva voce* vote in the Senate and by a non-record vote in the House. See TEX.GEN. & SPEC. LAWS, 71st Leg., ch. 103, § 1 (1989) (histori-

cal notes). The proposed constitutional amendment to TEX. CONST. Article IV, § 11 allowing parole instructions to be issued to criminal juries was approved by the voters of this State by a margin of 901,297 to 239,-714. See Proposition No. 10, Canvass Rept. (Election of Nov. 7, 1989).

Each of these three examples show that when this Court has attempted to re-write the laws of this State, the elected representatives of the people have stepped in and rebuked these acts of judicial legislation.

In the instant case, this Court should not take it on itself to "fill in the blanks" of our State Constitution and write a new provision allowing the Courts of Appeals to review all criminal cases for factual sufficiency of the evidence by using a civil standard.[7] That should only become the law of this State if it is the carefully considered and publicly debated decision of our Legislature to make that change, and if it is the will of the people to ratify that change.[8]

The majority feels this bit of judicial legislation is justified by their implied perception that there is an overwhelming need to correct manifestly unjust verdicts. I do not agree because there are mechanisms within place in our criminal justice system which already serve more than adequately to correct manifestly unjust verdicts. Contrary to the belief of the majority, as set out in note 19, supra, "due process protection and the administration of justice" are sufficiently furthered by these mechanisms and do not require the additional tinkering proposed by the majority's adoption of a factual sufficiency of the evidence review.

First, a defendant can pursue relief from an unjust verdict under the authority of TEX.CODE CRIM.PROC.ANN. art. 11.07.

In *Ex parte Brandley*, 781 S.W.2d 886 (Tex. Cr.App.1989), this Court granted relief to the defendant pursuant to his art. 11.07 writ on the grounds that the state's investigative procedures led to a denial of the defendant's rights to due process and fundamental fairness at his trial. *Brandley*, 781 S.W.2d, at 891–895. In *Ex parte Adams*, 768 S.W.2d 281 (Tex.Cr.App.1989), this Court granted relief to the defendant pursuant to his art. 11.07 writ on the ground that he was denied a fair trial because the State suppressed a witness' prior inconsistent statements and failed to correct a witness' perjurious testimony. *Adams*, 768 S.W.2d, at 290–294. As shown by these two cases, a defendant can obtain relief from a fundamentally unfair trial under the authority of art. 11.07.

Art. 11.07 also provides an avenue for relief for a defendant who is asserting a claim of factual innocence. In *State ex rel. Holmes v. Third District Court of Appeals*, 885 S.W.2d 389 (Tex.Cr.App.1994), this Court decided that state habeas corpus under Art. 11.07 was the appropriate remedy for a defendant who contends that he or she has newly discovered evidence demonstrating his or her innocence. This Court then crafted a threshold standard for a defendant to meet in presenting an 11.07 claim of factual innocence, and for a reviewing court to apply in assessing such a claim. *Holmes*, 885 S.W.2d, at 396–399.

Art. 11.07 is not the only avenue open to a defendant who seeks relief from a manifestly unjust verdict. A defendant can also pursue relief through the executive clemency process. In Texas, in all criminal cases "except treason and impeachment," the Governor has the power upon the recommendation of a majority of the Board of Pardons and Paroles, to grant clemency to an inmate on the

---

7. The majority's proposal stands in contrast to reviewing the factual sufficiency of the evidence in those criminal cases wherein the courts of appeals, or this Court on direct appeal, are called upon to resolve questions of the weight and preponderance of the evidence adequate to prove a matter that the defendant must prove. See TEX. CONST. ART. V, § 6; *Meraz v. State*, 785 S.W.2d 146, at 154–155 (Tex.Cr.App.1990); and *Bigby v. State*, 892 S.W.2d 864, at 874–875 (Tex.Cr.App. 1994).

8. In his majority opinion, Judge Maloney states that "nothing in the Texas Constitution or the

Texas Code of Criminal Procedure limits the courts of appeals to a *Jackson* review." *Clewis v. State*, at 133.

If it is true that there is nothing in the Constitution or the laws of this State to specifically prevent the judicial activism of the majority opinion, then that is a good reason for the Legislature to step forward and make it clear that the appellate courts of this State are limited in reviews of the sufficiency of the evidence in criminal cases to application of the *Jackson* standard of review.

grounds of innocence. See TEX. CONST. art. IV, § 11; and TEX.CODE CRIM.PROC. ANN. art. 48.01. If a defendant's verdict of guilt confining him to prison were manifestly unjust due to a failure of the sufficiency of the evidence, would not this qualify as a ground of innocence to warrant a grant of executive clemency?

Lastly, if a defendant is able to show that the verdict rendered against him at trial is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, then he or she would be eligible to pursue federal habeas relief. In *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), the Court decided that "a truly persuasive demonstration of actual innocence made after trial would render the execution of a defendant unconstitutional." *Herrera,* at 417, 113 S.Ct. at 869. The Court relied on the protections of the Due Process Clause of the Fourteenth Amendment in reaching this conclusion. Federal habeas relief would also provide another avenue of relief from a verdict that was clearly wrong and unjust.

Because I disagree with the judicially activist approach of the majority in its desire to add a second opportunity for convicted felons to seek a review of the sufficiency of the evidence supporting the convictions against them, and because I believe there are other avenues open for any defendant to pursue in a quest for relief from a verdict that was so contrary to the overwhelming weight of the evidence to be clearly wrong and unjust, I respectfully dissent to the majority's decision.[9]

MANSFIELD, Judge, dissenting.

Let me acknowledge at the beginning that the opinion of the majority is well-written and is based on generally sound reasoning. However, for the reasons given herein, I cannot agree with its ultimate holding, that is, the standard for reviewing sufficiency of the evidence, established in *Jackson v. Virgi-*

*nia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is inadequate to ensure that individuals will have their claims of insufficiency of the evidence properly reviewed on appeal. Furthermore, I do not agree that a different standard should be used to review "factual" sufficiency claims as opposed to "legal" sufficiency claims.

The framers of the United States and Texas Constitutions took great care to incorporate provisions to safeguard the rights of citizens accused of crimes, at least in part to prevent persons from being convicted for crimes they did not commit. The Fourth Amendment protects citizens from unreasonable searches and seizures, requiring that a warrant be obtained before a person may be arrested or his property searched or seized. The Fifth Amendment also protects us from self-incrimination, double jeopardy and denial of due process of law. The Sixth Amendment provides an accused with the right to a speedy and public trial, the right to an impartial jury, the right to call witnesses in his favor and to confront witnesses against him, and the right to assistance of counsel for his defense. The Eighth Amendment prohibits excessive bail, excessive fines, and the imposition of cruel and unusual punishments.[1]

Most of the provisions of the United States Constitution's Bill of Rights have been extended to protect citizens from actions of state and local governments through various U.S. Supreme Court decisions. See, for example, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (Double Jeopardy); *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (self-incrimination); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (Exclusionary Rule); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (Confrontation Clause); *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

The Texas Legislature, through the Code of Criminal Procedure, has enacted addition-

---

9. The ruling by the majority in the instant case has benefits only for criminals. This is just another effort by the majority to coddle criminals. If the evidence is legally sufficient in a criminal case, why does there need to be another factual review using civil law standards?

1. The corresponding provisions of the Texas Constitution are: Article I, Section 9; Article I, Section 10; Article I Sections 11–11a; Article I, Section 13; Article I, Section 14, Article I, Section 15; and Article I, Section 19.

al safeguards to protect the rights of Texans accused of crimes. For example, confessions, to be admissible, must comply with Article 38.22. An arrest warrant must comply with Chapter 15, and a search warrant must comply with Chapter 18. Article 38.23 bars the admission of any evidence against the accused obtained in violation of the laws or Constitution of the United States or of Texas, the statutory equivalent of the U.S. Supreme Court's Exclusionary Rule.

Texas Rule of Appellate Procedure 81(b)(2) requires this Court, as well as the courts of appeals, to reverse a judgment under review where the appellate record reveals error in the proceedings below, unless the reviewing court determines *beyond a reasonable doubt* the error made no contribution to the conviction or the punishment.

The Supreme Court of the United States and this Court, in interpreting, respectively, the United States Constitution and the Texas Constitution and the laws of Texas (including the Code of Criminal Procedure) have, by case law, developed additional rules to protect Texans from being unjustly accused and convicted of crimes. To prevent the admission of illegally-obtained evidence at trial, the Exclusionary Rule was established by the Supreme Court in *Mapp v. Ohio, supra. Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), prohibits racial discrimination in the selection of jurors in criminal cases. A person accused of a crime must be informed as to his rights to remain silent, that anything he says may be used against him and his right to counsel, including his right to appointed counsel if he cannot afford retained counsel. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

Finally, a person, after having unsuccessfully appealed his conviction, may contest its validity by applying for a writ of habeas corpus under Article 11.07, and, should he be unsuccessful in state court, he may file an application for a writ of habeas corpus in federal court.

In *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), the Supreme Court held that a conviction based on a record wholly devoid of any relevant evidence of a crucial element of the offense charged is constitutionally infirm. In effect, the Court found that a conviction based on "no evidence" deprives the accused of his due process rights. In *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Court held the Fourteenth Amendment's Due Process Clause protects an accused from a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. at 364, 90 S.Ct. at 1073.

In *Jackson v. Virginia, supra,* the Supreme Court was faced with the dilemma of giving proper deference to the jury's power to render its verdict in a criminal case while at the same time exercising its supervisory role as an appellate court to reverse jury verdicts that are arbitrary, capricious and not based on the evidence presented at trial. The Supreme Court in *Jackson* rejected the "no evidence" standard of *Thompson v. Louisville, supra.* It held:

> After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS,* 385 U.S. 276, 282, 87 S.Ct. 483, 486 [17 L.Ed.2d 362] (1966). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
>
> \* \* \* \* \* \*
>
> "... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof

of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 318–19, 324, 99 S.Ct. at 2788–89, 2791–92.

The Supreme Court's standard gives proper deference to the role of the jury in our criminal justice system. As indicated in the above citation, the Court states clearly that it refuses to substitute its judgment for that of the jury and that it will only overturn a jury's verdict where "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."

As Judge White emphasizes—correctly—in his dissenting opinion, an appellate court, unlike the jury, does not observe the witnesses and is unable to take into account their demeanor in determining their truthfulness or the accuracy of their testimony. An appellate court does not see the accused and is unable to observe his demeanor. All it sees is the record, which is not the same as "being there." Furthermore, Texas Constitution, Article I, Section 15 has been interpreted by this Court to provide "the jurors are the exclusive judges of the facts and of the issues of the facts." *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App.1994). See also Tex.Code Crim.Proc. Art. 37.13 ("Unless otherwise provided in this Code, the jury is the exclusive judge of the facts....") and Art. 38.04.

The majority opinion, I believe, does not give deference to the intent of the Legislature as expressed in Article 36.13 and Article 38.04, that is, the appellate courts of Texas are not to *second-guess* jury verdicts by substituting their own judgment for that of twelve citizens who "were there." *Jackson v. Virginia, supra*, established a standard of legal sufficiency review under the federal due process clause applicable to Texas under the Fourteenth Amendment and we have not, to date, gone beyond that standard. *Jackson v. Virginia* does not conflict with Article 36.13 or Article 38.04; a jury that does not act rationally in arriving at its verdict has failed to fulfill the role assigned to it by the Legislature and its verdict should not be given deference.

This Court has held it may, however, find more protection for persons accused or convicted of crimes under the Texas Constitution than under similar provisions of the United States Constitution. *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). Appellant fails, in my opinion, to provide persuasive authority to move this Court to find that a different evidentiary sufficiency review on appeal of jury verdicts is required under the due course of law provision (Art. I, Section 19) of the Texas Constitution than the "any rational trier of fact" standard found by the U.S. Supreme Court to meet the federal constitution's due process clause requirements in *Jackson v. Virginia, supra.*

The majority, in my opinion, also does not provide compelling reasons why we should abandon the *Jackson v. Virginia* standard. Little evidence that the current standard is unworkable or has resulted in the affirmance of unjust convictions is presented in the brief of appellant or in the amicus brief. Second, the Legislature has already established a procedure by which an individual with a legitimate claim of innocence may pursue this claim by filing a post-conviction writ of habeas corpus under Article 11.07. In *State ex rel Holmes v. Third District Court of Appeals*, 885 S.W.2d 389 (Tex.Crim.App.1994), we established a procedure by which an individual could present a claim of actual innocence by filing an application for a writ of habeas corpus under Article 11.07. We also established the standard of proof the individual must meet in order to be entitled to a review of his claim of actual innocence as well as the standard of review to be applied by the court in reviewing such a claim. *Holmes, supra*, at 396–399.[2]

It also should be noted an individual with a valid claim of actual innocence, if unsuccessful at the state level, may pursue federal habeas corpus relief. *Jackson v. Virginia* and *In re Winship* are both federal habeas corpus cases, demonstrating clearly that federal habeas corpus is a truly meaningful remedy for pursuing claims of actual innocence. See also, *Herrera v. Collins*, 506 U.S. 390,

---

**2.** Although executive clemency is rarely granted, an individual with a meritorious claim of actual innocence can pursue such a claim through the executive clemency process. See Tex.Code Crim.Proc., art. 48.01; Tex. Const., art. I, section 11.

113 S.Ct. 853, 122 L.Ed.2d 203 (1993), which indicates federal habeas corpus relief would be available to an individual with a meritorious actual innocence claim.

*Conclusion*

In my opinion, taking into account the constitutional and statutory provisions in place to protect the rights of accused persons, as well as the several post-conviction methods by which convicted individuals can pursue bona fide claims of actual innocence, the *Jackson v. Virginia* standard of review of claims related to sufficiency of the evidence on appeal is adequate to protect the citizens of Texas from affirmances of unjust convictions. I believe the Due Course of Law provision of the Texas Constitution provides the same level of protection with respect to the right to meaningful appellate review of claims of sufficiency of the evidence as the Due Process Clause of the federal constitution. I therefore cannot agree that the Texas Constitution requires a different standard of appellate review with respect to sufficiency of the evidence claims than that formulated by the Supreme Court in *Jackson v. Virginia* with respect to such claims under the federal constitution.

Accordingly, I would hold that a *single* standard, the legal sufficiency standard of *Jackson v. Virginia*, should apply to all claims of insufficiency of the evidence raised on appeal in criminal cases. Furthermore, I would hold that the Legislature did not intend for Texas courts of appeals to conduct a separate factual sufficiency review[3] of the evidence as doing so would infringe on the role of the jury assigned to it under Article 36.13 and Article 38.04 as the exclusive judge of the facts.[4],[5]

I respectfully dissent.

---

3. Because the claims are essentially identical, I believe that one standard of review should be used to address claims of legal insufficiency as well as claims of factual insufficiency of the evidence. That standard, of course, is that of *Jackson v. Virginia*. I find it difficult to imagine a case where, if the evidence is *factually* insufficient to support a jury verdict of guilty, that it would not be also *legally* insufficient to support said guilty jury verdict.

4. Although not addressed by the majority or in appellant's petition for discretionary review, I believe the *Jackson v. Virginia* standard should be applied by this Court with respect to sufficiency of the evidence claims raised in direct appeals to this Court under Article 37.071 (2)(h).

5. I reject any suggestion that my opinion in any way shows disrespect for the courts of appeals of Texas. I merely express my position that the new standard of review promulgated by the majority is not necessary for the reasons outlined in my opinion.